Jonathan W. Fountain
Nevada Bar No. 10351
JFountain@LRLaw.com
LEWIS AND ROCA LLP
3993 Howard Hughes Pkwy., Ste. 600
Las Vegas, NV 89169-5996
Tel.: 702.949.8340
Fax: 702.949.8374

E. Leif Reid
Nevada Bar No. 5750
LReid@LRLaw.com
LEWIS AND ROCA LLP
50 West Liberty St., Ste. 410
Reno, NV 89501-1922
Tel.: 775.321.3415
Fax: 775.823.2929

Josh Krevitt (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035

H. Mark Lyon (admitted *pro hac vice*)
Y. Ernest Hsin (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Tel.: 650.849.5300
Fax: 650.849.5333

Attorneys for Defendant Apple Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNWIRED PLANET LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No. 3:12-CV-00505-RCJ-VPC<br><br>**DEFENDANT APPLE INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)** |

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................2

    A.  Apple and Its Potential Witnesses Are Based and Located in
        the Northern District of California....................................................................3

    B.  Unwired Planet Has a History of Contacts with the Northern
        District of California and Lacks Significant Contacts with the
        District of Nevada .............................................................................................4

    C.  The Majority of Non-Party Witnesses Are Located in
        Northern California – None Are in Nevada .......................................................5

        1.  Most of the Inventors Reside in Northern California –
            None Reside in Nevada............................................................................5

        2.  Most of the Individuals Accused of Inequitable Conduct
            Reside in Northern California – None Are in Nevada..............................6

        3.  Most of the Counsel Who Prosecuted the Patents Are
            Located in Northern California – None Are in Nevada............................6

        4.  Numerous Relevant Former Unwired Planet Employees
            Reside in Northern California – None Reside in Nevada.........................7

III.    ARGUMENT.........................................................................................................8

    A.  This Action Could Have Been Brought in the Northern
        District of California .........................................................................................8

    B.  The Private Factors Overwhelmingly Favor Transfer .......................................9

        1.  The Parties Have Far Greater Contacts with the Northern
            District of California.................................................................................9

        2.  The Contacts Relating to the Causes of Action Are
            Located in the Northern District of California .......................................13

        3.  Ease of Access to Sources of Proof Strongly Favors the
            Northern District of California ...............................................................15

        4.  Many Non-Party Witnesses Would be Subject to
            Compulsory Process in the Northern District of California
            – None Would Be in the District of Nevada...........................................17

        5.  The Cost of Litigation Will Be Far Less in the Northern
            District of California...............................................................................18

        6.  Unwired Planet's Choice of Forum Is Entitled to Little, If
            Any, Weight ............................................................................................18

    C.  The Applicable Public Factors Favor Transfer ................................................20

    D.  The Remaining Private and Public Factors Are Neutral or Not
        Applicable .......................................................................................................20

IV.     CONCLUSION ..................................................................................................21

Gibson, Dunn &
Crutcher LLP

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Convergence Technologies (USA) v. Microloops Corporation*,
   711 F. Supp. 2d 626 (E.D. Va. 2010) ...................................................................12

*Dainippon Screen Manufacturing Co. v. CFMT, Inc.*,
   142 F.3d 1266 (Fed. Cir. 1998) ............................................................................12

*GPNE Corp. v. Amazon.com, Inc.*,
   No. 11-00426 SOM-RLP, 2012 WL 1656923 (D. Haw. May 9, 2012) .......15, 16, 19

*Healy v. Philips*,
   69 F.3d 544 (9th Cir. 1995) ....................................................................................8

*Hertz Corp. v. Friend*, 559 U.S. 77,
   130 S.Ct. 1181 (2010) ...........................................................................................12

*In re Acer America Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010) ............................................................................17

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ......................................................................15, 16

*In re Hoffmann-La Roche, Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ............................................................................12

*In re Link_A_Media Devices Corp.*,
   662 F.3d 1221 (Fed. Cir. 2011) ............................................................................13

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011) ..............................................................10, 12, 20

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009) ............................................................................16

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ............................................................................15

*In re Verizon Business Network Services*,
   635 F.3d 559 (Fed. Cir. 2011) ..............................................................................18

*In re Volkswagen of America, Inc.*,
   545 F.3d 304 (5th Cir. 2008) .........................................................................15, 16

*In re Zimmer*,
   587 F.3d 1336 (Fed. Cir. 2009) ....................................................................10, 12

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) ..............................................................................8, 9

*Koster v. Lumbermens Mutual Casualty Co.*,
   330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) .............................................13

*Lockman Foundation v. Evangelical Alliance Mission*,
   930 F.2d 764 (9th Cir. 1991) ................................................................................19

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
   425 F. Supp. 2d 325 (E.D.N.Y. 206) ...................................................................15

*Osteotech, Inc. v. GenSci Regeneration Sciences, Inc.*,
   6 F. Supp. 2d 349 (D.N.J. 1998) ..........................................................................19

Gibson, Dunn &
Crutcher LLP

*Pacific Car & Foundry Co. v. Pence,*
  403 F.2d 949 (9th Cir. 1968)................................................................................19

*Pragmatus AV, LLC v. Facebook, Inc.,*
  769 F. Supp. 2d 991 (E.D. Va. 2011)...................................................................20

*Ricoh Co., Ltd. v. Honeywell, Inc.,*
  817 F. Supp. 473 (D.N.J. 1993)...........................................................................15

*Ruiz v. Affinity Logistics,*
  No. C 05-02015JSW, 2005 WL 5490240 (N.D. Cal. Nov. 7, 2005)......................16

*Saleh v. Titan Corp.,*
  361 F. Supp. 2d 1152 (S.D. Cal. 2005)................................................................16

*Shared Memory Graphics LLC v. Apple Inc.,*
  No. 5:09CV5128 BSM, 2010 WL 5151612 (W.D. Ark. May 27, 2010) ................11

*Unwired Planet LLC v. Google, Inc.,*
  No. 3:12-cv-00504-LRH-VPC (Sept. 19, 2012)....................................................4, 9

*Ventress v. Japan Airlines,*
  486 F.3d 1111 (9th Cir. 2007)..............................................................................13

**Statutes**

28 U.S.C. § 1391(c)(2)..........................................................................................9

28 U.S.C. § 1391(d)...............................................................................................9

28 U.S.C. § 1400(b)...............................................................................................9

28 U.S.C. § 1404(a)........................................................................................1, 8, 21

**Rules**

Fed. R. Civ. P. 45(b)(2) ........................................................................................18

Gibson, Dunn &
Crutcher LLP

1        Defendant Apple Inc. ("Apple") respectfully moves this Court, pursuant to 28

2   U.S.C. § 1404(a), for an Order transferring this action to the United States District

3   Court for the Northern District of California.  This Motion is based on the following

4   Memorandum of Points and Authorities and the declarations and exhibits filed

5   herewith.

6                   **MEMORANDUM OF POINTS AND AUTHORITIES**

7                        **I.     INTRODUCTION**

8        Every factor considered by the Ninth Circuit in determining proper venue favors

9   transfer of this case to the Northern District of California.  Defendant Apple was

10  founded and is headquartered in the Northern District of California and has no relevant

11  particularized ties to Nevada.  Plaintiff Unwired Planet LLC was formed in Nevada

12  literally *days* before this lawsuit was filed and exists *only* to serve as a patent holding

13  company and lawsuit plaintiff.  And Unwired Planet LLC's parent company, Unwired

14  Planet, Inc., to whom the Complaint attributes the Asserted Patents, was founded in the

15  Northern District of California and has conducted business in that District since its

16  inception in 1994.

17       Not surprisingly, therefore, the relevant, operative facts – including the

18  conception and commercialization by Unwired Planet of the alleged inventions, the

19  prosecution of the patents in suit, and the development by Apple of the accused

20  products – occurred or are occurring in the Northern District of California.  As a result,

21  the vast majority of relevant documents and witnesses – including named inventors of

22  the patents, prosecuting attorneys, and Apple's engineers who developed the accused

23  products – are also located in the Northern District of California.

24       That the Northern District of California is the focal point for the facts and

25  witnesses is also plainly evidenced by the parties' discovery efforts in another case that

26  Unwired Planet, Inc. recently pursued against Apple covering similar accused products

27  and technologies.  Specifically, in 2011, Unwired Planet, Inc. filed suit against Apple

28  in the U.S. International Trade Commission in Washington, DC.  In that case, because

Gibson, Dunn &
Crutcher LLP

of the convenience of the witnesses and parties, and despite the parties' being free to choose to appear for depositions any place in the country, every single party witness was deposed – including *every single Unwired Planet witness* – in the Northern District of California.

In contrast, this District "enjoys" no unique relationship with Apple and only the following recent, litigation-inspired contacts with Unwired Planet: (1) six days before it filed this lawsuit, Unwired Planet LLC was organized as a limited liability company in this district and (2) on the same day that the lawsuit was filed, Unwired Planet, Inc. announced plans to move from Northern California to Nevada sometime in the future. But both the Ninth Circuit and the Federal Circuit have rejected such transparent efforts to manufacture ties to a district for the purposes of establishing venue.  In fact, the courts have routinely and repeatedly ordered transfer even in cases in which the parties had much stronger and lengthier ties to the original jurisdiction than either Unwired Planet LLC or its predecessors, including Unwired Planet, Inc. (collectively "Unwired Planet"), have to the District of Nevada.

Because the relevant factors overwhelmingly favor transfer, Apple respectfully requests that the Court grant this Motion and transfer the case to the Northern District of California.

## II.    FACTUAL BACKGROUND

Unwired Planet filed this lawsuit against Apple on September 19, 2012, alleging that Apple infringes the following ten patents assigned to Unwired Planet:  U.S. Patent Nos. 6,317,594; 6,317,831; 6,321,092; 6,532,446; 6,647,260; 6,813,491; 7,020,685; 7,233,790; 7,299,033; and 7,522,927 (collectively, the "Asserted Patents").  Dkt. No. 1, Complaint ("Compl.") ¶¶ 15-24, 27.  The patents relate to a variety of technologies, and Unwired Planet has accused numerous Apple products of infringement, including: Apple's iPhone, iPad, and iPod touch, Apple's iOS operating system, Apple App Store and iTunes for iOS, apps available for Apple's iOS products, notification and location services provided by Apple to its customers (including through Apple's Safari

browser), Siri, and the infrastructure used by Apple to support the aforementioned systems or services.  *Id.* ¶ 27.  Development of these products and systems occurred or occurs in the Northern District of California.  Declaration of Mark Buckley ("Buckley Decl.") ¶¶ 3-8.

As noted above, Unwired Planet has filed other cases against Apple in the past. In August 2011, Unwired Planet's parent sued Apple in the U.S. International Trade Commission (ITC) in Washington, DC, for the alleged infringement of five patents. Declaration of Brooke Wallace ("Wallace Decl.") ¶ 3, Ex. 1.  At approximately the same time, Unwired Planet also filed a companion suit to the ITC Investigation in the District of Delaware.  *Id.* ¶ 26, Ex. 16.  In those cases, Unwired Planet accused many of the same products accused in this case – including Apple's iPhone, iPad, iPod touch, and Apple's App Store, iTunes and Safari for iOS.  *See id.* ¶ 5.  On the eve of trial, after the administrative law judge issued a claim construction order adopting most of Apple's proposed constructions, Unwired Planet dismissed the case in its entirety.  *Id.* ¶ 4, Ex. 2.  While the Delaware case was stayed during the ITC Investigation, the stay was lifted in December 2012.

Extensive discovery was taken in the ITC Investigation.  Unwired Planet deposed thirteen Apple fact witnesses; *all* of those depositions took place in the Northern District of California.  *Id.* ¶ 5.  Apple also deposed six Unwired Planet witnesses; Unwired Planet produced all of its witnesses in the Northern District of California.  *Id.* ¶ 6.  In the course of the ITC Investigation, which, again, accused many of the same products at issue in this case, no party produced any witnesses, documents, or other discovery located in the District of Nevada.  *Id.* ¶ 3.

## A.  Apple and Its Potential Witnesses Are Based and Located in the Northern District of California

Apple was founded and is still based in Cupertino, California, in the Northern District of California.  *See* Buckley Decl. ¶ 2.  Apple currently has more than 13,800 employees working at its headquarters in Cupertino.  *Id.* ¶ 5.  Based on Apple's

understanding of what is accused in this lawsuit, development of the relevant aspects of the accused products occurred or is occurring in the Northern District of California, not in Nevada.  *See id.* ¶¶ 3-4, 6-8.  To the best of Apple's knowledge (given the early stage of the case and the lack of infringement contentions), the relevant engineers involved in the development, implementation, or operation of the accused products are located in the Northern District of California, not in Nevada.  *See id.*  To the best of Apple's knowledge, the documentation relating to the development, implementation, or operation of the accused products are also located in the Northern District of California, not in Nevada.  *See id.*

**B.    Unwired Planet Has a History of Contacts with the Northern District of California and Lacks Significant Contacts with the District of Nevada**

On September 13, 2012, six days before this lawsuit was filed, Unwired Planet, Inc. formed Unwired Planet LLC, the plaintiff in this action, in Nevada.  Wallace Decl. ¶ 12, Ex. 8.  Unwired Planet LLC is nothing more than a patent holding company for the Asserted Patents.  *See generally id.* ¶¶ 15, 27; Exs. 11, 17, at 20.  It does no business in Nevada other than prosecuting this lawsuit and another one filed against Google, Inc.  *Id.* ¶ 27, Ex. 17, at 20; *Unwired Planet LLC v. Google, Inc.*, No. 3:12-CV-00504-LRH-VPC (Sept. 19, 2012).  Notably, it is Unwired Planet, Inc. who has issued every press release and announcement regarding this litigation.  *See generally id.* ¶ 15, Ex. 11.  In addition, in its Complaint, and again last week, on January 24, 2013, Unwired Planet LLC submitted a Case Management Report in this case claiming that its "principal place of business" is at 226 California Avenue, Reno, Nevada.  Compl. ¶ 4; Dkt. No. 35.  But as of the very next day, January 25, 2013, that location – *i.e.*, the alleged location in Nevada of the titular plaintiff in this lawsuit – *was nothing but a vacant room*, sitting above an unrelated retail gift shop, *with no actual office*.  Declaration of Danielle Durkee ("Durkee Decl.") ¶ 2.  Furthermore, neither Unwired Planet LLC nor Unwired Planet, Inc. is even licensed to do business in Nevada, as neither appears currently to have a Reno business license.  *Id.* ¶ 3.

Although it registered Plaintiff Unwired Planet LLC as a Nevada limited liability company, Unwired Planet, Inc. is a Delaware corporation, founded in 1994 and based for virtually its entire existence in Redwood City, California, in the Northern District of California. *See* Compl. ¶ 8; Wallace Decl. ¶¶ 7-12,Exs. 3-8. On September 19, 2012, *the same day* that Plaintiff Unwired Planet LLC filed its complaint against Apple in Nevada, Unwired Planet, Inc. announced that it intended to move its headquarters from Redwood City to Reno, Nevada. *Id.* ¶ 13, Ex. 9. Even after that announcement, however, Unwired Planet, Inc. has still identified its headquarters as being located in Redwood City or Silicon Valley in certain filings with the Securities and Exchange Commission and in various press releases. *See id.* ¶ 14, Ex. 10, ¶ 25, Ex. 15. In addition, Unwired Planet's CEO has admitted in public comments that its "move" to Nevada was motivated by this (and other) litigations. *See id.*¶ 15, Ex. 11.

C.     **The Majority of Non-Party Witnesses Are Located in Northern California — None Are in Nevada**

1.     **Most of the Inventors Reside in Northern California — None Reside in Nevada**

As noted above, Unwired Planet has asserted ten patents against Apple in this lawsuit. According to the cover page of each patent, which identifies the original assignee and the location of the named inventors at the time of filing, none of the assignees or named inventors were located in Nevada at the time of filing; most were located in the Northern District of California. *Id.* ¶ 17. Indeed, the ten patents list eighteen inventors, none of whom were ever employed by Plaintiff Unwired Planet LLC, and none of whom appear to be currently employed at Unwired Planet, Inc. *Id.* ¶ 16. Based on publicly available information, it appears that eleven of the eighteen inventors reside or work in the Northern District of California, six inventors reside in Washington, Colorado, and Ireland, and one inventor's location is unknown. *Id.* ¶ 17. Based on available information, moreover, it appears that *none* of the inventors reside in or are even within the subpoena power of the District of Nevada. *See id.*

1

2

### 2.    Most of the Individuals Accused of Inequitable Conduct Reside in Northern California — None Are in Nevada

3

4

5

6

7

8

Apple has asserted inequitable conduct claims against six individuals.  Dkt. No. 29 ("Answer"), ¶¶ 9-100.  Five of the accused individuals work or reside in the Northern District of California (Messrs. Kjellberg, Becker, Chen, Schwartz, and Martin, Jr.), with the sixth individual residing in Bend, Oregon (Mr. King).  *See* Wallace Decl. ¶¶ 17-18.  None of the individuals reside in or are within the subpoena power of Nevada.  *See id.*

9

10

### 3.    Most of the Counsel Who Prosecuted the Patents Are Located in Northern California — None Are in Nevada

11

12

13

14

15

16

17

18

19

20

21

22

23

24

With respect to counsel who prosecuted the Asserted Patents before the U.S. Patent and Trademark Office, it appears that all of the Asserted Patents, other than the three acquired by Unwired Planet from third parties, were prosecuted, at least in part, by counsel located in the Northern District of California.  Lawyers from the San Francisco office of Townsend, Townsend & Crew LLP (now Kilpatrick Townsend & Stockton LLP) prosecuted the '927, '092, and '033 patents.  *Id.* ¶ 19 (Melvin Chan and Alan Minsk).  A lawyer from the Sunnyvale office of Blakely, Sokoloff, Taylor and Zaffman LLP prosecuted the '033 patent.  *Id.* (Jordan Becker).  Lawyers from the Los Angeles office of the same firm prosecuted the '446 and '260 patents.  *Id.*  (Jordan Becker and Dag Johansen).  Both of those Los Angeles lawyers now work and live in the Northern District of California.  *Id.* A lawyer from the Palo Alto office of Beyer, Weaver & Thomas LLP (now Beyer Law Group LLP) prosecuted the '831 patent. *Id.*(C. Douglass Thomas).  Lawyers from the Palo Alto office of Stattler, Johansen & Adeli prosecuted the '260 patent.  *Id.* (Adeli Mani, John Stattler and Dag Johansen).[1]

25

26

27

28

---

[1]   San Francisco, Palo Alto, and Sunnyvale, California, are all located in the Northern District of California.

Gibson, Dunn &
Crutcher LLP

On information and belief, today six of Unwired Planet's former counsel involved in the prosecutions of the Asserted Patents work, and presumably live, in the Northern District of California.  *See id.* (C. Douglass Thomas, Melvin Chan, Jordan Becker, Thomas C. Webster, John Stattler, and Dag Johansen).  One works outside of the Northern District of California, but within the state of California, in Los Angeles. *Id.* (Adeli Mani).  The remaining attorneys work in Colorado, Texas, and Washington State.  *Id.* (Michael J. Fogarty, III, Michael A. Papalas, David H. Tannenbaum, Kent A. Fischmann, Kenneth L. Johnson, Alan Minsk).  On information and belief, *none* reside within the District of Nevada, nor are they within the subpoena power of the District of Nevada.  *See id.*

### 4.    Numerous Relevant Former Unwired Planet Employees Reside in Northern California — None Reside in Nevada

In 2012, Unwired Planet, Inc. sold its operating businesses (retaining only its patent portfolio) to two companies in Redwood City, California, and another company based in India but whose U.S. office is in Santa Clara, California – in the Northern District of California.  Compl. ¶ 14; Wallace Decl. ¶¶ 20, 24, Exs. 12-14.  On information and belief, at least one former Unwired Planet, Inc. employee who has knowledge of the work that led to or is related to the Asserted Patents is still employed at one of the companies that acquired Unwired Planet's operating businesses and is therefore located in the Northern District of California.  *Id.*, ¶ 28, Ex. 18.

In addition, several other former Unwired Planet employees known to have relevant knowledge are believed to be located in Northern California.  For example, David Cordeiro, Unwired Planet's former associate general counsel and intellectual property counsel, lives and works in Northern California.  *Id.* ¶ 21.  Based on information learned in the ITC Investigation, it is likely that Mr. Cordeiro possesses knowledge of patent licenses Unwired Planet entered into during his tenure, which will be relevant to any damages calculation in this case.  Similarly, Bruce Posey, Unwired Planet's former general counsel, works in San Mateo, California, and is also likely to

Gibson, Dunn &
Crutcher LLP

1    have knowledge of Unwired Planet's patent licenses.  *Id.* ¶ 22.  Apple is unaware of

2    any relevant former Unwired Planet employee who resides in Nevada.

### III.    ARGUMENT

4         Pursuant to 28 U.S.C. § 1404(a), a court may transfer a case to a forum where

5    the action could have been brought "[f]or the convenience of parties and witnesses,

6    [and] in the interests of justice."  28 U.S.C. § 1404(a); *Healy v. Philips*, No. 94-56624,

7    1995 WL 643268, at *1 (9th Cir. Nov. 1, 1995).  The Ninth Circuit has identified

8    several private and public interest factors to determine whether the requirements of

9    section 1404(a) are satisfied.  The private interest factors include "(1) the location

10   where the relevant agreements were negotiated and executed, (2) the state that is most

11   familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective

12   parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of

13   action in the chosen forum, (6) the differences in the costs of litigation in the two

14   forums, (7) the availability of compulsory process to compel the attendance of

15   unwilling non-party witnesses, and (8) the ease of access to sources of proof."  *Jones v.*

16   *GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).  The public interest

17   factors identified by the courts include "the administrative difficulties flowing from

18   court congestion; the local interest in having localized controversies decided at home;

19   the interest in having the trial of a diversity case in a forum that is at home with the law

20   that must govern the action; the avoidance of unnecessary problems in conflict of laws,

21   or in the application of foreign law; and the unfairness of burdening citizens in an

22   unrelated forum with jury duty."  *Id*.

23   **A.    This Action Could Have Been Brought in the Northern District of**

24   **California**

25        As a threshold matter in deciding section 1404(a) motions, courts consider

26   whether the action could have been brought in the target transferee district.  Apple is

27   (and was at the time this lawsuit was filed) resident, headquartered, and subject to

28   personal jurisdiction in the Northern District of California.  Unwired Planet cannot

dispute, therefore, that it could have filed this action in the Northern District of California.  *See* 28 U.S.C. §§ 1391(c)(2), (d); 1400(b).

**B.     The Private Factors Overwhelmingly Favor Transfer**

**1.     The Parties Have Far Greater Contacts with the Northern District of California**

As explained above, both Apple and Unwired Planet have strong and long-standing ties with the Northern District of California, and no significant ties with the District of Nevada.  Apple was founded and has been headquartered in Cupertino, California, in the Northern District of California, since 1976.  Buckley Decl. ¶ 2.

The titular plaintiff in this action, Unwired Planet LLC, has no history or business in this district other than its creation in September 2012for this (and another) patent infringement lawsuit. *See Unwired Planet LLC v. Google, Inc.*, No. 3:12-CV-00504-LRH-VPC (Sept. 19, 2012).  Indeed, Unwired Planet, Inc.'s recent filing with the Securities and Exchange Commission unambiguously admits that Unwired Planet LLC conducts *no business at all* other than as a patent holding corporation:

> Except for owning the Patents contributed to it by UP [Unwired Planet, Inc.], commencing and conducting the Legal Actions set forth on Schedule 4.2(e)-1 and the incurrence of expenses in connection therewith or as otherwise described on Schedule 4.2(e)-2 since its formation, *UPLLC [Unwired Planet LLC] has (i) conducted no other business, operations or activities, (ii) owns no other assets or properties, (iii) has no material liabilities or obligations of any kind* other than pursuant to this Agreement and the Ancillary Agreements to which it is a party and (iv) is not a party to or bound by any Contract, other than this Agreement and those Contracts described on Schedule 4.2(e)-2 and, upon execution and delivery by UPLLC, the Ancillary Agreements to which UPLLC is a party.

Wallace Decl., ¶ 27, Ex. 17, at 20 (emphasis supplied).  Moreover, even though Unwired Planet LLC has represented to this Court in its Complaint (Compl., ¶ 4), and again just days ago, on January 24, 2013, that its "principal place of business" is at a California Avenue address in Reno (Dkt. No. 35), the next day Apple confirmed that this location is entirely vacant – Unwired Planet LLC has no office there.  Durkee Decl. ¶ 2.

1    Courts have repeatedly made clear that creation of an entity in a particular

2    district for purposes of prosecuting litigation in that district is not a basis to resist

3    transfer.  For example, in *In re Microsoft Corporation*, the Federal Circuit ordered

4    transfer where the plaintiff was incorporated in the original district sixteen days before

5    filing suit and for the purpose of litigating the case.  630 F.3d 1361, 1364-65 (Fed. Cir.

6    2011).  Similarly, in *In re Zimmer*, the Federal Circuit ordered transfer where the

7    plaintiff's location of its principal place of business in the original venue was plainly

8    designed to manipulate venue.  587 F.3d 1378, 1382 (Fed. Cir. 2009) (finding the

9    plaintiff's connection to the original district to be a "legal fiction").  Here, Unwired

10   Planet LLC's organization in Nevada just six days before the filing of the lawsuit for

11   the stated purpose of litigation in this District falls squarely under the types of facts

12   that have been rejected as bases for resisting transfer.  *See In re Microsoft,* 630 F.3d at

13   1364-65 (rejecting the plaintiff's argument that it was entitled to the original venue

14   simply because it was incorporated and had its principal place of business in the

15   original district).

16   While Unwired Planet LLC's parent, Unwired Planet, Inc. (not a party),

17   admittedly is not a brand-new entity created just for litigation, its history and ties all lie

18   with the Northern District of California, not with the District of Nevada.  As noted

19   above, Unwired Planet, Inc. was founded in Northern California in 1994 and has been

20   located in that district for almost twenty years.  Wallace Decl. ¶¶ 7-11, Exs. 3-7.  Thus,

21   the technologies relating or leading to the Asserted Patents (other than those acquired

22   by Unwired Planet) were developed while Unwired Planet, Inc. was headquartered and

23   had its engineering development located *in Northern California*.  *Compare* Compl. ¶¶

24   15-24 *and* Wallace Decl. ¶¶ 7-11, Exs. 3-7.  Meanwhile, Unwired Planet LLC had no

25   role in the development of the Asserted Patents.  In similar situations, courts have

26   concluded that the parent's connection with the transferee district outweighed its

27   subsidiary's connection with the transferor district, even where that subsidiary was

28   incorporated in the transferor district.  *Shared Memory Graphics LLC v. Apple Inc.*,

Gibson, Dunn &
Crutcher LLP

No. 5:09CV5128 BSM, 2010 WL 5151612, *3-4 (W.D. Ark. May 27, 2010) (granting defendant's motion to transfer to the Northern District of California, where although plaintiff was incorporated in the transferor district, the plaintiff entity had no role in the development of the Asserted Patents, and the plaintiff's parent company, which negotiated and purchased the patents in question before transferring them to the plaintiff, was headquartered in Southern California, which the court observed was "considerably closer" to the Northern District of California than to the Western District of Arkansas).

Moreover, no weight should be given to Unwired Planet, Inc.'s recent "move" to Nevada.  First, Unwired Planet, Inc. is not a party to this lawsuit, so its "move" is not persuasive to the analysis.  Second, Unwired Planet, Inc. only announced its "move" the day this litigation was filed.  And third, it is not clear at this point whether Unwired Planet, Inc.'s recent "move" to Nevada has real substance.  For example, Unwired Planet, Inc. continues to issue press releases out of Redwood City that identify Silicon Valley as its headquarters.  *Id.* ¶ 25, Ex. 15.  In addition, it is not clear whether or how many of Unwired Planet, Inc.'s current employees, including its executive leadership team, are actually residents of Nevada.  *See id.* ¶ 23; *see also* Durkee Decl. ¶ 2.  Three of the four individuals on Unwired Planet, Inc.'s "Executive Leadership" webpage appear, based on publicly available information, to be located in the San Francisco Bay Area.  Wallace Decl. ¶ 23.  All three of those executives were deposed in the just-concluded lawsuit at the International Trade Commission involving Unwired Planet and Apple and had their depositions taken in Northern California.  *Id.*  Furthermore, neither Unwired Planet LLC nor Unwired Planet, Inc. is even licensed to do business in Nevada, as neither appears to currently have a Reno business license. Durkee Decl. ¶ 3.  What is clear, however, is that both the organization of Unwired Planet LLC in Nevada and the public announcement of its parent's "move" to Nevada are motivated by litigation – facts to which Unwired Planet, Inc.'s CEO has admitted in public comments.  *See* Wallace Decl. ¶ 15, Ex. 1.

Gibson, Dunn &
Crutcher LLP

In sum, Unwired Planet LLC's organization in Nevada just six days before it filed this lawsuit and Unwired Planet, Inc.'s "move" to Reno, Nevada, are precisely the types of litigation-driven maneuvers that courts have rejected as reasons to oppose transfer to a more convenient forum.  *See, e.g.*, *In re Microsoft Corp.*, 630 F.3d at 1364-5; *In re Zimmer Holdings, Inc.*, 609 F.3d at 1381(citing *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S.Ct. 1181, 1195 (2010)(ordering transfer where the plaintiff's presence in the original forum was "*recent, ephemeral, and an artifact of litigation*" (emphasis supplied)); *In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009) ("A plaintiff's attempts to manipulate venue in anticipation of litigation or a motion to transfer falls squarely within these prohibited activities."); *Convergence Techs. (USA) v. Microloops Corp.*, 711 F. Supp. 2d 626, 641-42 (E.D. Va. 2010) (granting defendant's motion to transfer to the Northern District of California, where although the plaintiff was incorporated in the transferor district, the court concluded that the transferor district was only "nominally" plaintiff's home forum as the plaintiff was owned and controlled by a foreign corporation for the purposes of managing the foreign parent's U.S. sales); *see also Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998) (finding that the subsidiary patent holding company, over which the parent maintained complete control, could not be used as a vehicle to divert personal jurisdiction from the parent's home district).

In fact, even in situations where *the party seeking transfer* was incorporated in the original forum *long before* the motion to transfer was filed, the Federal Circuit has ordered transfer and given minimal weight to the parties' location of incorporation. For example, in *In re Link_A_Media Devices Corporation*, 662 F.3d 1221 (Fed. Cir. 2011), the Federal Circuit reversed the district court's denial of transfer despite the fact that the defendant seeking transfer was incorporated in the plaintiff's chosen forum years before the lawsuit was filed.  *Id.* at 1223-24 (reversing the district court's denial of transfer and finding "inappropriate" the district court's "heavy reliance" on the defendant's long-standing location of incorporation in the lawsuit's original forum)

Gibson, Dunn &
Crutcher LLP

12

1    (citing *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527-528, 67 S.Ct. 828

2    (1947) (the "[p]lace of corporate domicile in such circumstances might be entitled to

3    little consideration under the doctrine of forum non-conveniens, which resists

4    formalization and looks to *the realities* for doing justice." (emphasis supplied)).  Here,

5    the reality is that plaintiff Unwired Planet LLC's organization in Nevada – which

6    occurred virtually simultaneously with Unwired Planet LLC's filing of this lawsuit –

7    and non-party Unwired Planet, Inc.'s recent "move" to Nevada – the extent of which

8    remains unclear – are "recent, ephemeral, and an artifact of litigation," and should be

9    given no weight in the transfer analysis whatsoever.  *See also Hertz Corp*., 559 U.S.

10   77, 130 S.Ct. at 1194 (holding that "nothing more than a mail drop box, a bare office

11   with a computer, or the location of an annual executive retreat" cannot constitute a

12   corporation's "nerve center").

13              **2.    The Contacts Relating to the Causes of Action Are Located in the**

14                     **Northern District of California**

15          The Ninth Circuit finds transfer appropriate where there is "[n]o significant

16   connection between [the forum] and the facts alleged in the complaint."  *See, e.g.*,

17   *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).  Here, there is no

18   connection – significant or otherwise – between Nevada and any of the facts alleged in

19   the Complaint.

20          As explained above, Plaintiff Unwired Planet LLC has accused Apple of

21   infringing ten patents.  Compl. ¶ 27.  *All* of the events, and hence contacts, relating to

22   the development of the alleged inventions claimed in the Asserted Patents occurred

23   outside of this District, and predominately in the Northern District of California.  First,

24   as noted above, Unwired Planet, Inc. was located in Northern California (*id.* ¶¶ 7-11,

25   Exs. 3-7) when all of the applications underlying the Asserted Patents were filed

26   (between 1996 and 2008).  Compl. ¶¶ 15-24.  (Plaintiff Unwired Planet LLC did not

27   exist.)  Second, according to the cover page of each of the Asserted Patents, at the time

28   the patents were filed nearly all of the named inventors resided in the Northern District

of California.  *See* Wallace Decl. ¶ 17.  The patents identify the remaining inventors as being from Washington, Colorado, and Ireland.  *Id.* Taken together, the location of the companies and inventors demonstrate that all of the engineering work or product development that led or relates to the patents occurred *outside of this District*, and predominately in the Northern District of California.  Similarly, and also as explained above, most of the attorneys who prosecuted the patent applications are also located in Northern California.  *See id.* ¶¶ 17, 19.  No activity related to the prosecution of the Asserted Patents occurred in Nevada.

Additionally, the relevant events, and hence contacts, related to the accused products occurred outside of this District and *in the Northern District of California*.  Specifically, the research, design, and development work related to the relevant aspects of Apple's accused products occurred or is occurring in Northern California –not in Nevada.  Buckley Decl. ¶¶ 4, 6.  The engineers and documents related to that work, therefore, are located within the Northern District of California.  *Id.*  And although Apple sells the accused products nationwide, there is no indication that Apple specifically targets customers in Nevada over customers in other states, so that "connection" cannot outweigh the lack of connection in every other respect.[2] *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (holding sale of product in district does not create local interest because product sold nationwide); *Lycos, Inc.*, 499 F. Supp. 2d at 692 (E.D. Va. 2007) ("Lycos notes that Virginia's residents purchase and use allegedly infringing products, method, and systems from the defendants. However, the defendants likely have this same contact with every other state in this nation."); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 318 (5th Cir. 2008)

---

[2]  While Apple's subsidiary, Braeburn Capital – an asset management firm – is based in Nevada, it has no involvement with the patent infringement issues relevant to this lawsuit.  Buckley Decl. ¶ 8.  Similarly, based on Apple's understanding of the accused products and functions in this case, Apple's current retail stores and/or plans to build a data center in Nevada in the future have no bearing on the patent infringement issues.  *Id.* ¶¶ 9-10.

(disregarding local interest of citizens who used the widely sold product within the transferor venue).

Clearly, the Northern District of California possesses a far greater relationship to the causes of action than this District.

### 3.     Ease of Access to Sources of Proof Strongly Favors the Northern District of California

Given that the contacts relating to the causes of action in this case are located in Northern California, it is no surprise that the ease-of-access-to-sources-of-proof factor *overwhelmingly* favors transfer to the Northern District of California.

First, as the Federal Circuit has recognized, in patent infringement cases, "the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). Courts in the Ninth Circuit have held that "[i]n patent infringement actions, the preferred forum is 'that which is the center of gravity of the accused activity.'" *GPNE Corp. v. Amazon.com, Inc.*, No. 11-00426 SOM-RLP, 2012 WL 1656923, at *5 (D. Haw. May 9, 2012) (quoting *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 482 n.17 (D.N.J. 1993)).  Here, as explained, Apple is headquartered in Northern California, the development of the accused products occurred or is occurring in Northern California, and the relevant documents therefore also are located in Northern California.[3] Buckley Decl. ¶¶ 4, 6.  Likewise, Apple's marketing, finance, and sales employees who might be witnesses in this case are located in Northern California.  *See*

---

[3]  The Court should consider the physical location of evidence, even where some of the evidence is stored electronically.  *In re Volkswagen of Am., Inc.*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (same).

Gibson, Dunn & Crutcher LLP

1  *id.* Indeed, in the ITC Investigation, as noted, all of Apple's witnesses and documents

2  were produced out of the Northern District of California.

3       Consequently, litigation in the District of Nevada would impose additional costs

4  on Apple and require its witnesses to spend additional time away from their regular

5  employment than would otherwise be required if the case were prosecuted in the

6  Northern District of California. *See In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199

7  (Fed. Cir. 2009) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d at 317 ("Additional

8  distance [from home] means additional travel time; additional travel time increases the

9  probability for meal and lodging expenses; and additional travel time with overnight

10 stays increases the time these fact witnesses must be away from their regular

11 employment.")). Indeed, courts in the Ninth Circuit have held that the "inconvenience

12 to witnesses is sometimes considered *the most important factor* in determining whether

13 a transfer of venue is appropriate." *GPNE Corp.*, 2012 WL 1656923, at *3 (citing

14 *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005)) (emphasis

15 supplied); *Ruiz v. Affinity Logistics*, No. C 05-02015JSW, 2005 WL 5490240, at *8

16 (N.D. Cal. Nov. 7, 2005).

17      Further, as discussed above, the development by Unwired Planet of the

18 technology relating to the Asserted Patents occurred while Unwired Planet was located

19 in Northern California. *Id.* ¶¶ 7-11, Exs. 3-7. And the companies that bought Unwired

20 Planet's operating business – Openwave Mobility, Inc. and Openwave Messaging, Inc.

21 – are still located in Northern California. *Id.* ¶ 24, Exs. 13-14. Thus, it is likely that

22 any technical witnesses involved in the development of the technology underlying the

23 patents at issue reside within the Northern District of California. *See id.* ¶ 28, Ex. 18.

24 Indeed, in the just-concluded case between Unwired Planet and Apple at the U.S.

25 International Trade Commission, every single one of Unwired Planet's witnesses who

26 gave depositions were offered up by Unwired Planet for depositions in Northern

27 California. *Id.* ¶ 6.

28

Gibson, Dunn &
Crutcher LLP

16

And with respect to the attorneys who prosecuted the patents in suit, today, five of the prosecuting attorneys still reside in Northern California. *Id.* ¶ 19. One lives outside of the district, but within the state of California, in Los Angeles. *Id.* The remaining prosecuting attorneys are in Colorado, Texas, and Washington State. *Id.* None work or reside in Nevada. *See id.* Thus, the sources of proof associated with the prosecution of the Asserted Patents are far more accessible in Northern California than in Nevada.

In cases such as this, where the vast amount of evidence is in the proposed transferee district, transfer is appropriate. *See, e.g.*, *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (holding that sources-of-proof factor favored transfer where significant portion of evidence was located in the proposed transferee district).

### 4. Many Non-Party Witnesses Would Be Subject to Compulsory Process in the Northern District of California – None Would Be in the District of Nevada

Because *none* of the foreseeable third-party witnesses are subject to compulsory process in this District, but most would be if this action is transferred to the Northern District of California, this factor weighs heavily in favor of transfer. In fact, as detailed above in Section II.C., if this litigation were to remain in Nevada, Apple would not be able to compel the attendance at trial of even one inventor or former prosecution counsel. On the other hand, most of the non-party inventors are located in Northern California (*id.* ¶ 17), as are most of the prosecuting attorneys, none are in Nevada. *Id.* ¶ 19. Moreover, all but one of the individuals accused by Apple of inequitable conduct are located in Northern California; none are located in Nevada. *Id.* ¶ 18. In addition, the former Unwired Planet employees of whom Apple is aware and from whom Apple may seek testimony are also located in Northern California, not Nevada. *Id.* ¶¶ 21-23. Accordingly, the majority of individuals with relevant knowledge are located in Northern California, and therefore, they are subject to compulsory process in the Northern District of California. *See* Fed. R. Civ. P.

45(b)(2).  And *none* of them are located within 100 miles of the courthouse of the United States District Court for the District of Nevada in Reno, so *none* of them would be subject to compulsory process in this jurisdiction.  *Id.* As such, the location of non-party witnesses *overwhelmingly* favors transfer.

### 5.    The Cost of Litigation Will Be Far Less in the Northern District of California

It would be far less costly, for reasons set forth in detail above, to litigate this case in the Northern District of California.  First, the vast majority of sources of proof – including party and non-party documents and witnesses – are located within the Northern District of California.  The travel costs associated with party and non-party witnesses' participation in trial, for example, would be much lower in the Northern District of California, where virtually all of these witnesses are domiciled, than they would be if this case were tried in the District of Nevada (assuming that the non-party witnesses even agreed to show up for trial in the District of Nevada in the first place). *In re Verizon Bus. Network Servs.*, 635 F.3d 559, 561 (Fed. Cir. 2011) (where it was undisputed that no witnesses resided within 100 miles of the transferor district, transferring the case would "significantly" reduce the cost, time and expense of travel).

### 6.    Unwired Planet's Choice of Forum Is Entitled to Little, If Any, Weight

A plaintiff's choice of forum is "far from absolute," even in situations in which the plaintiff has strong and long-standing ties to that forum.  *See Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991).  What matters in the transfer analysis is where the operative facts occurred, and therefore "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration."  *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968); *see also GPNE Corp. v. Amazon.com, Inc.*, 2012 WL 1656923, at *5 ("Where the action has little connection with the chosen forum, less deference is

afforded to plaintiff's choice, even if plaintiff is a resident of the forum."). "In patent infringement, the preferred forum is 'that which is the center of gravity of the accused activity.' The district court 'ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.'" *GPNE Corp.*, 2012 WL 1656923, at *5 (citations omitted).

Here, as also described in detail above, virtually all of the operative facts – including the development of the alleged inventions, the prosecution of the Asserted Patents, and the development of the accused products – occurred in the Northern District of California, rather than in the District of Nevada. *See* Section III.B.2, *supra*. The fact that the accused products may be sold in the District of Nevada – just as they are in every other judicial district in the country, including in the Northern District of California – is not persuasive in the transfer analysis. *See Lycos*, 499 F. Supp. 2d at 692 ("It is well-settled that the mere existence of limited sales activity within Virginia does not require this court to give the plaintiff's choice of forum substantial weight when balancing the convenience and justice factors. . . . Moreover, the fact that Virginia's residents use the purportedly infringing products, methods, and systems avails Lycos nothing, as Lycos is not suing those residents in this action."); *Osteotech, Inc. v. GenSci Regeneration Scis., Inc.*, 6 F. Supp. 2d 349, 358 (D.N.J. 1998) (weight is not given to "where limited sales activity has occurred").

Plaintiff Unwired Planet LLC's formation in Nevada and organization under Nevada law just days before the Complaint was filed and Unwired Planet, Inc.'s recent "move" to the District of Nevada should similarly be rejected as bases for resisting transfer. *See In re Microsoft*, 630 F.3d at 1365 (finding transfer appropriate where the plaintiff incorporated in the chosen forum sixteen days before the lawsuit was filed); *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011) (finding that plaintiff's choice of forum should be afforded "minimal weight" where plaintiff was formed in the chosen forum five months before it filed the lawsuit). *See also Lycos, Inc.* 499 F. Supp. 2d at 692 (minimizing significance of plaintiff's alleged

connection with Virginia, where although plaintiff was incorporated in Virginia, Virginia's laws of incorporation were irrelevant to the lawsuit).  Indeed, Unwired Planet, Inc.'s CEO publicly admitted that these efforts were litigation driven.  *See* Wallace Decl. ¶ 15, Ex. 11.

## C.    The Applicable Public Factors Favor Transfer

The local interest of the Northern District of California in having localized controversies decided at home is strong here, where virtually all of the causes of action and most of the applicable witnesses are located in that forum.  *See* Sections II.B.2-3, *supra*.  Unwired Planet's formation in Nevada just before filing this lawsuit does not change the fact that this case involves two companies with deep roots in Northern California, patents that were developed and prosecuted in Northern California, and accused products that were developed in Northern California.

Given the close relationship of the controversies involved in this lawsuit with the Northern District of California and their utter lack of relationship to Nevada, it would be unfair to burden the citizens of Nevada with jury duty for this case.  This is particularly acute in this lawsuit, as it will likely require a lengthy trial, given that Unwired Planet has chosen to assert ten different patents and accuse at least fifteen different products of infringement.  Compl. ¶¶ 15-24, 27.

## D.    The Remaining Private and Public Factors Are Neutral or Not Applicable

All of the remaining private and public factors – the location where the relevant agreements were negotiated and executed, the state that is most familiar with the governing law, the administrative difficulties flowing from court congestion, the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, and the avoidance of unnecessary problems in conflict of laws or in the application of foreign law – are either neutral or not applicable to this lawsuit, and therefore do not affect the transfer calculus.

Gibson, Dunn &
Crutcher LLP

20

1

# IV.   CONCLUSION

2

For the foregoing reasons, Apple respectfully requests that the Court grant this

3

Motion and transfer this case, pursuant to 28 U.S.C. § 1404(a), to the United States

4

District for the Northern District of California.

5

DATED: February 1, 2013

6

By: /s/ Jonathan W. Fountain
Jonathan W. Fountain

7

Nevada Bar No. 10351
JFountain@LRLaw.com

8

LEWIS AND ROCA LLP
3993 Howard Hughes Pkwy., Ste. 600

9

Las Vegas, NV 89169-5996
Tel.: 702.949.8340

10

Fax: 702.949.8374

11

E. Leif Reid
Nevada Bar No. 5750

12

LReid@LRLaw.com
LEWIS AND ROCA LLP

13

50 West Liberty St., Ste. 410
Reno, NV 89501-1922

14

Tel.: 775.321.3415
Fax: 775.823.2929

15

16

Josh Krevitt (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP

17

200 Park Avenue
New York, NY 10166-0193

18

Tel.: 212.351.4000
Fax: 212.351.4035

19

H. Mark Lyon (admitted *pro hac vice*)

20

Y. Ernest Hsin (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP

21

1881 Page Mill Road
Palo Alto, CA  94304-1211

22

Tel.: 650.849.5300
Fax: 650.849.5333

23

*Attorneys for Defendant Apple Inc.*

24

101447325.5

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## CERTIFICATE OF SERVICE

I, hereby certify that on February 1, 2013, I filed a true and accurate copy of the foregoing document entitled, **DEFENDANT APPLE INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1414(a)**, with the Clerk of the Court via the Court's CM/ECF system, which will send electronic notice of the same to the following CM/ECF participants:

- Theodore Stevenson III (tstevenson@mckoolsmith.com);
- Kevin L. Burgess (kburgess@mckoolsmith.com);
- Pierre J. Hubert (phubert@mckoolsmith.com);
- Michael D. Rounds (mrounds@watsonrounds.com); and
- Adam K. Yowell (ayowell@watsonrounds.com)

Dated: this 1st day of February, 2013.

 /s/ Jonathan W. Fountain
An employee of Lewis and Roca LLP

Gibson, Dunn &
Crutcher LLP