Theodore Stevenson III (*pro hac vice*)
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
300 Crescent Court, Suite 1500
MCKOOL SMITH, P.C.
Dallas, Texas 75201
Telephone: (214) 978-4000
Fax: (214) 978-4044

Kevin Burgess (*pro hac vice*)
Texas State Bar No. 2400069
kburgess@mckoolsmith.com
Pierre Hubert (*pro hac vice*)
Texas State Bar NO. 240023
phubert@mckoolsmith.com
MCKOOL SMITH, P.C.
300 W. 6th St., Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Fax: (512) 692-8744

Michael D. Rounds
Nevada Bar No. 4734
mrounds@watsonrounds.com
Adam K. Yowell
Nevada Bar No. 11748
ayowell@watsonrounds.com
WATSON ROUNDS
5371 Kietzke Lane
Reno, NV 89511-2083
Telephone: (775) 324-4100
Fax: (775) 333-8171

*Attorneys for Plaintiff*

Jonathan W. Fountain
Nevada Bar No. 10351
JFountain@LRLaw.com
LEWIS AND ROCA LLP
3993 Howard Hughes Pkwy., Ste. 600
Las Vegas, NV 89169-5996
Tel.: 702.949.8340
Fax: 702.949.8374

E. Leif Reid
Nevada Bar No. 5750
LReid@LRLaw.com
LEWIS AND ROCA LLP
50 West Liberty St., Ste. 410
Reno, NV 89501-1922
Tel.: 775.321.3415
Fax: 775.823.2929

1  Josh Krevitt (admitted *pro hac vice*)
   GIBSON, DUNN & CRUTCHER LLP
2  200 Park Avenue
   New York, NY  10166-0193
3  Tel.: 212.351.4000
   Fax: 212.351.4035
4
   H. Mark Lyon (admitted *pro hac vice*)
5  Y. Ernest Hsin (admitted *pro hac vice*)
   GIBSON, DUNN & CRUTCHER LLP
6  1881 Page Mill Road
   Palo Alto, CA  94304-1211
7  Tel.: 650.849.5300
   Fax: 650.849.5333
8
   *Attorneys for Defendant Apple Inc.*
9

10                **UNITED STATES DISTRICT COURT**

11                  **DISTRICT OF NEVADA**

12
   UNWIRED PLANET LLC, a Nevada
13 limited liability company,
                                              Case No.: 3:12-CV-00505-RCJ-VPC
14              Plaintiff,
                                              **JOINT CASE MANAGEMENT**
15        v.                                  **REPORT**

16 APPLE INC., a California corporation,

17              Defendant.

18

19

20

21

22

23

24

25

26

27

28

Pursuant to the Court's February 19, 2013, Minute Order (Dkt. #43), Plaintiff UNWIRED PLANET LLC ("Plaintiff"), by its attorneys, and Defendant APPLE INC., ("Defendant"), by its attorneys, submit the following Joint Case Management Report.  The parties intend to raise the following issues at the March 15, 2013, Case Management Conference.

**A.     Disagreements Regarding Certain Provisions Contained in the Parties' Draft Protective Order**

The parties have been conducting good-faith negotiations regarding a protective order covering this action.  The parties have reached agreement on the vast majority of provisions but request the Court's assistance to resolve disputes concerning three provisions.  The parties attach hereto the two versions of the draft proposed protective order—Exhibit A contains Unwired Planet's latest proposals to Apple; Exhibit B contains Apple's response and counterproposals thereto.  Reference will be made to the specific provisions in dispute.

**1.     *Provisions Barring Litigation Counsel from Participating in Patent Prosecution, Certain Reexamination and Reissue Proceedings, and from Counseling Clients Regarding Certain Business Decisions***

Paragraph 6(b) contains a provision barring litigation counsel for either party from participating in the prosecution of patent applications related to "the functionality, operation, and design of mobile applications relating to the technology disclosed in any of the patents-in-suit."  *See* Exs. A and B at 7.  Defendant seeks to have this "patent prosecution bar" cover counsel who have accessed the opposing party's highly confidential business information or source code from directly or indirectly participating in reexamination proceedings and counseling companies regarding the acquisition of any patent or patent application related to the functionality, operation, and design of mobile applications.

*Plaintiff's Proposal:*

Plaintiff contends that Defendant's proposed expansion is overly broad and overly restricts counsel's ability to participate in patent reexamination proceedings and to otherwise counsel Plaintiff on business decisions that are at the very heart of Plaintiff's business.

First, by way of example, any reexamination proceedings concerning the patents-in-suit would likely be instituted by Defendant.  Defendant's one-sided proposal allows Defendant's

counsel to participate in reexamination proceedings, but not Plaintiff's counsel.  Reexamination proceedings are public proceedings based upon publicly-available prior art.  *See In re Etter,* 756 F.2d 852, 856-857 (Fed. Cir. 1985).  During the course of these public proceedings, Defendant would submit prior art to the U.S. Patent Office, seeking to invalidate some or all of the patents-in-suit, and such prior art is likely to be the same publicly available prior art that will be at issue in this action.  It cannot be disputed that the claims of a patent may only be narrowed in reexamination and that the claims are always based on the information set forth in the originally filed patent specification.  *See, e.g.*, 35 U.S.C. § 305 ("No proposed amendment or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding").  Moreover, reexamination is directed to the alleged prior art, an aspect where Apple's confidential information will play no role.  Plaintiff contends that it is a waste of resources to require Plaintiff to retain completely separate counsel for any such proceedings when (i) litigation counsel will already be up to speed on the issues and the prior art, (ii) the proceedings are of public record and will involve invalidity issues that substantially overlap with the invalidity issues in this action, and (iii) the proceedings will involve the same public prior art that will be at issue in this action.

Moreover, Plaintiff has proposed limiting litigation counsel's abilities to participate in the actual amending of claims in any reexamination proceedings.  *See* Ex. A at 7, ll. 12-17 ("These prohibitions … are intended, inter alia, to preclude patentee's counsel from participating in the drafting of any claim amendments in reexamination or reissue proceedings.").  Such limitations serve as a safeguard, preventing litigation counsel from engaging in claim amendments, while still allowing litigation counsel to serve a role in the substance of the proceedings.  This addresses completely any concern of Apple's that litigation counsel could theoretically use its confidential information in reexamination proceedings.  Many courts have allowed litigation counsel to participate in reexamination proceedings with or without the limitation on claim drafting that Plaintiff proposes.  *See Document Generation Corp. v. Allscripts, LLC*, No. 6:08-CV-470, 2009 U.S. Dist. LEXIS 52874, at *3, 8 (E.D. Tex. June 23, 2009) (finding that the proposed protective order did not need to prohibit the patentee's litigation counsel from

1   participating in reexamination proceedings, given the prohibition in reexamination against the

2   amendment of claims that would enlarge the scope of the patent); *Crystal Image Tech., Inc. v.*

3   *Mitsubishi Elec. Corp.*, No. 08-307, 2009 U.S. Dist. LEXIS 32972, at *9 (W.D. Pa. Apr. 17,

4   2009) (finding that it would allow the plaintiff's litigation counsel to participate in the

5   reexamination if it was the opposing party that initiated the reexamination, and if litigation

6   counsel accepted an express legal obligation not to rely on confidential information supplied by

7   the opposing party); *Kenexa BrassRing Inc. v. Taleo Corp.*, No. 07-521-SLR, 2009 U.S. Dist.

8   LEXIS 12002, at *5, 5 n.1, 6 (D. Del. Feb. 18, 2009) (finding that the prosecution bar did not

9   extend to reexamination proceedings); *Hochstein v. Microsoft Corp.*, No. 04-73071, 2008 U.S.

10  Dist. LEXIS 72750, at *10, 11 (E.D. Mich. Sept. 24, 2008) (finding good cause for allowing

11  participation in the reexamination); *Pall Corp. v. Entegris, Inc.*, No. 05-CV-5894, 2008 U.S.

12  Dist. LEXIS 96682, at *24 (E.D.N.Y. Nov. 26, 2008) (finding that the prosecution bar did not

13  extend to reexamination proceedings); *NeXedge, L.L.C.v. Freescale Semiconductor, Inc.*, 2011

14  U.S. Dist. LEXIS 121737, at *7-8 (D. Az. October 20, 2011) (rejecting defendants' proposed

15  exclusion of litigation counsel from reexaminations); *Mirror Worlds, LLC v. Apple, Inc.*, 2009

16  U.S. Dist. LEXIS 70092, at *5 (E.D. Tex. Aug. 11, 2009) (rejecting reexamination bar; "[c]laims

17  can only be narrowed during reexamination; they cannot be broadened. This is very different

18  from patent prosecution where claim scope is being initially determined. Thus, the risk of harm

19  … is already greatly limited.").

20         Further, the U.S. District Court for the Northern District of California has considered this

21  very issue and it allows litigation counsel to participate in reexamination proceedings in its

22  Model Protective Order.  *See* Ex. H, Patent Local Rule 2-2 Interim Model Protective Order at 12,

23  ll. 16-21 (N.D. Cal.), *available at* http://www.cand.uscourts.gov/stipprotectorder ("For purposes

24  of this paragraph, 'prosecution' includes directly or indirectly drafting, amending, advising, or

25  otherwise affecting the scope or maintenance of patent claims.  To avoid any doubt,

26  'prosecution' as used in this paragraph does not include representing a party challenging a patent

27  before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte*

28  reexamination or *inter partes* reexamination)").

1    Second, Plaintiff's business heavily involves mobile application technologies and the

2  potential acquisition of patents and patent portfolios from other companies, and counsel for

3  Plaintiff may need to advise Plaintiff regarding future acquisition matters.  Plaintiff contends that

4  Defendant's proposal will overly restrict Plaintiff's counsel in rendering advice on matters that

5  go to the heart of Plaintiff's business, despite other protections in the protective order that would

6  prevent counsel from using information obtained in this action when rendering any such advice.

7  *See* Exs. A and B at 3, ll. 3-5 ("Protected Material designated under the terms of this Protective

8  Order shall be used by a Receiving Party ***solely for this case***, and shall not be used directly or

9  indirectly for any other purpose." (emphasis added)).  Further, there is no reason to believe

10  Plaintiff's counsel will be unable to comply with such provisions just as it does, for example,

11  when it advises clients on settlement in matters that involve confidential information.

12    *Defendant's Proposal:*

13    Courts and parties include prosecution bars in protective orders is because they recognize

14  the inherent – and unavoidable – difficulty for any individual to avoid taking information learned

15  for one purpose (e.g., litigation) and using it for another purpose (e.g., patent prosecution or

16  acquisition).  *See*, *e.g.*, *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir.

17  2010) ("It is very difficult for the human mind to compartmentalize and selectively suppress

18  information once learned, no matter how well-intentioned the effort may be to do so.") (internal

19  quotations omitted).  The courts recognize that compartmentalizing knowledge in such a manner

20  is, practically speaking, impossible.  *Id.* Because of this difficulty, prosecution bars are routinely

21  included in protective orders despite the fact that those protective orders also invariably include

22  prohibitions against using confidential information learned in the litigation for any other purpose.

23  *See*, *e.g.*, *Motorola, Inc. v. Interdigital Tech. Corp.*, No. 93–CV–488, 1994 WL 16189689, *2-3

24  (D. Del. Dec. 19, 1994); *Cheah IP LLC v. Plaxo, Inc.*, No. 08-cv-4872, 2009 WL 1190331, at *2

25  (N.D. Cal. May 4, 2009) (granting prosecution bar because "the risk to Defendants if there were

26  no bar is significant.  Without a patent prosecution bar, Plaintiff's litigation attorneys could

27  inadvertently disclose to patent prosecution counsel Defendants' confidential technical

28  information which could inform the fashioning of seven continuation patents being prosecuted

1    by Plaintiff thereby providing Plaintiff with strategic advantage. . . . [C]ontrary to what Plaintiff

2    contends, a term in the protective order specifying that confidential information may be used

3    only for purposes of this litigation is not sufficient.").

4           These bars are especially necessary in high technology patent cases (like this one)

5    because allowing counsel that has access to a party's highly confidential technical information

6    concerning the inner-workings of its products to apply that information (even inadvertently) to

7    prosecute or acquire patents to cover those confidential features and inner-workings would be

8    highly prejudicial. *See, e.g., id.*; *Safe Flight Instrument Corp. v. Sunstrand Data Control Inc.*,

9    682 F. Supp. 20, *22 (D. Del. 1988) ("Courts dress technical information with a heavy cloak of

10   judicial protection because of the threat of serious economic injury to the discloser of scientific

11   information."); *Commissariat a L'Energie Atomique v. Dell Computer Corp.*, No. 03-484-KAJ,

12   2004 U.S. Dist. LEXIS 12782, at *6 (D. Del. May 25, 2004) ("This court has routinely

13   recognized the importance of protecting technical information, particularly in patent cases.");

14   *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1469 (Fed.Cir.1984) ("Inadvertence, like the

15   thief-in-the-night, is no respecter of its victims. Inadvertent or accidental disclosure may or may

16   not be predictable. To the extent that it may be predicted, and cannot be adequately forestalled in

17   the design of a protective order, it may be a factor in the access decision.").

18          The parties agree that a prosecution bar is needed in the protective order, but disagree as

19   to (1) whether the bar should extend to patent reexamination and reissue proceedings before the

20   Patent and Trademark Office (PTO), (2) whether the bar should extend to the acquisition of

21   patents, and (3) whether the bar should apply to those individuals "directly or indirectly"

22   involved in the prohibited activity.

23          Unwired Planet would limit the prosecution bar with respect to patent reexamination and

24   reissue proceedings to only the drafting or amending of claim amendments. This does not go far

25   enough to protect Apple's confidential information from misuse. With respect to patent

26   reexamination and reissue proceedings, as with the prosecution of patent applications, if the PTO

27   rejects any of the pending claims, the patentee may decide to amend strategically his/her claims –

28   thus altering their scope – to try to distinguish the prior art while still attempting to cover the

1    products of the parties the patentee has sued or intends to sue.  The patentee can also or instead

2    argue with the examiner's conclusions regarding the applicability of various pieces of prior art,

3    thereby attempting to distinguish those references from his/her invention, and thus effectively

4    changing his/her claims' scope in a similar fashion.  Arguments made during a reexamination of

5    patent become part of the intrinsic record.  *See*, *e.g.*, *Elkay Mfg. Co. v. EBCO Mfg. Co.*, 192 F.3d

6    973, 979 (Fed. Cir. 1999) ("Arguments made during prosecution of a patent application are given

7    the same weight as claim amendments.").  As a matter of law, therefore, to the extent Unwired

8    Planet makes arguments in a reexamination or reissue for maintaining claim validity, it will

9    result in surrender of patentable subject matter, and Unwired Planet will have shifted claim

10   scope, regardless of whether it makes claim amendments.  Unwired Planet's limitation of the

11   reexamination and reissue bar to only the "amendment" of claims thus is insufficient, and the bar

12   should extend to any involvement in reexaminations or reissues.

13        Indeed, the Federal Circuit in *In re Deutsche*, *supra*, has recognized that an attorney in

14   possession of an opponent's confidential information should be barred entirely from certain

15   activities due to the high risk of even inadvertent misuse of that information.  605 F.3d at 1380-

16   81.  Specifically prohibited activities include those that affect "the type and scope of patent

17   protection that might be available or worth pursuing."  *Id.*  Importantly, *In re Deutsche* makes no

18   exceptions for patent owners who claim they will forego claim amendments.  Instead, it focuses

19   on whether litigation counsel's very involvement in patent prosecution activities, including the

20   very activities implicated in reexamination or reissue proceedings, would rise to the level of

21   "competitive decisionmaking."  *Id.* at 1380.

22        It is clear that regardless of whether counsel is prosecuting claims in an original

23   application, reissuance or reexamination proceeding, attorneys that are "investigating prior art,"

24   "making strategic decisions on the type and scope of patent protection that might be available or

25   worth pursuing," or "strategically amending or surrendering claim scope during prosecution" –

26   all activities which Unwired Planet counsel could perform that fall short of the technical

27   definition of "drafting clams or claim amendments" – are acting as "competitive

28   decisionmakers" within the meaning of *In re Deutsche*.  *Id.*  This is especially true of Unwired

Planet's situation, as Unwired Planet's *only* business is enforcing its patents through litigation (or, as detailed below, buying new patents to enforce through litigation).  Consequently, and as proposed by Apple, persons who access Apple's highly confidential information or source code should be barred from participating as patentee's counsel in any reissue or reexamination proceeding relating to the functionality, operation, and design of mobile applications.  *See* Exh. B, ¶ 6(b).

With respect to the acquisition of patents, Unwired Planet's position that it needs its outside counsel to be involved in strategic decision-making about the acquisition of patents is *precisely* the reason why such counsel should be distinct from those with access to Apple's highly confidential information.  It would be highly injurious and prejudicial to Apple to allow Unwired Planet – a patent holding company – to benefit from having possession of Apple's confidential information and to use that information to acquire patents to assert against Apple's products.  It would be similarly prejudicial to Apple to allow other companies (besides Unwired Planet) that are advised by Unwired Planet's counsel who have access to Apple's confidential information to use that information to acquire patents for assertion against Apple's products.  Apple is willing to compromise, however, and allow counsel who access confidential information to be involved in settlement discussions, and Apple's proposed protective order reflects this carve-out.  *See* Exh. B, ¶ 6(b).

Finally, the parties disagree as to whether the bars at issue should apply to those individuals who are "directly or indirectly" involved in the prohibited activity.  Apple believes that the insertion of "directly or indirectly" is needed so that parties cannot circumvent the bar by simply communicating through an intermediary.  Apple further notes that, while Unwired Planet bases its positions on this and the other disputed protective order provisions partially on the Northern District of California's model protective order, that model has not been adopted by the District of Nevada.  And furthermore, even within the Northern District of California, the model order is used as merely a starting point and parties routinely incorporate additional precautions precisely of the nature proposed by Apple.

1
2

**2.    *Provisions Limiting the Amount of Source Code
an Expert or Attorney May Print***

3       Paragraph 11(c)(v) provides certain restrictions regarding the volume of source code an

4    expert or attorney may print while in the review room.  *See* Exs. A and B at 19-20.  The parties

5    have agreed to a number of restrictions regarding the printing of source code—e.g., source code

6    may not be printed for review and analysis outside the review room (Ex. A at 19, ll. 17-21) and

7    the producing party may object to the production of excessive amounts of source code (*id.* at 19,

8    l. 27 – 20, l. 3).

9       The parties, however, disagree over how the volume of printing should be restricted and

10   who should bear the burden when objecting to the default restrictions in the protective order.

11   Plaintiff proposes that experts and attorneys should be allowed to print "reasonable" portions

12   when necessary to prepare an exert report, court filing, pleading, or other paper and that

13   Defendant should bear the burden of showing that any such print requests are unreasonable or

14   requested for an improper purpose.  *See* Ex. A at 19-20.  Defendant seeks to define the scope of

15   "reasonable" printing, limiting such printing to 150 pages or less with no single block of code

16   exceeding 20 pages, and proposes that Plaintiff bear the burden of showing that additional pages

17   or larger blocks of source code are required.  *See* Ex. B at 19-20.

18       *Plaintiff's Proposal:*

19       Plaintiff contends that the hard limits proposed by Defendant are overly restrictive given

20   the early stage of the litigation.  Indeed, Plaintiff, right now, has no way of gauging how much

21   source code it will need to prepare all of its expert reports and to support every motion or

22   opposition that may be filed in this action.  Plaintiff contends that "reasonable" printing should

23   be allowed and that the hard caps proposed by Defendant could present a real impediment to

24   Plaintiff presenting its case.  Again, the Northern District of California has considered this very

25   issue and the Model Protective Order does not contain a hard cap on the amount of source code

26   that may be printed and contains provisions that largely mirror Plaintiff's proposal.  *See* Ex. H at

27   13, ll. 16-24.  Rather, the Northern District of California adopted a limit of reasonableness:

28

(d) The Receiving Party may request paper copies of limited portions of source code that are ***reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial***, but shall not request paper copies for the purpose of reviewing the source code other than electronically as set forth in paragraph (c) in the first instance. The Producing Party shall provide all such source code in paper form, including bates numbers and the label "HIGHLY CONFIDENTIAL – SOURCE CODE." The Producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 6 whereby the Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of dispute resolution.

*Id.* (emphasis added)  Given 10 patents across five to six discrete product groupings, a limit that amounts to 15 pages of printed code per patent is surely not nearly enough, especially where there may be a million lines of source code covering just one product.

Similarly, Plaintiff's proposal maintains the relative burdens contained in the Northern District of California's Model Protective Order.  *See* Ex. H at 13, ll. 21-24 ("The Producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 6 whereby the Producing Party is the 'Challenging Party' and the Receiving Party is the 'Designating Party' for purposes of dispute resolution.").  Moreover, Plaintiff has proposed safeguards protecting Defendant from any unreasonable print requests.  Indeed, under Plaintiff's proposal, Defendant still maintains control over its source code, does not produce such source code until after an expert has printed it (see the bates stamping provisions), and can object if it feels any print request is unreasonable (or that a print request has been made for an improper purpose) prior to actually producing the source code.  *See* Ex. A at 19, l. 27 – 20, l. 3.

   *Defendant's Proposal:*

As the Court is aware, this is not the first case in which Unwired Planet has sued Apple. Unwired Planet (f/k/a Openwave Systems, Inc.) brought suit against Apple in October 2011 at the International Trade Commission (ITC).  *In re the Matter of Certain Devices for Mobile Data Communication*, Inv. No. 337-TA-809 (Oct. 2011).  That case proceeded through the entirety of

discovery and was ultimately dismissed by Unwired Planet just before the start of trial.  That case also involved accused products similar to those accused in the current case.

Significantly, in the prior case, the parties spent months negotiating a mutually agreeable limit on source code printing.  Equally significantly, there were never any issues raised by Unwired Planet with respect to that limit during the case, and, indeed, the negotiated limit ended up being higher than needed, as the number of pages that Unwired Planet actually printed was lower than the limit.

In this case, Apple has proposed the same limit – 150 pages total and 20 consecutive pages – that the parties used successfully in the ITC case.  Unwired Planet, however, is now unwilling to compromise and instead seeks to strip any concrete limit from the agreement entirely.  Indeed, Unwired Planet has declined even to counter-propose any concrete limit.  The practical effect of Unwired Planet's proposal that there be no set page limit for source code printing is that Unwired Planet can theoretically ask to have all of Apple's proprietary source code printed (thereby making the source code protections in the protective order meaningless) and put the burden back on Apple to show that the printing is not reasonable.  Placing no concrete numerical limit, only a "reasonable" limit, on the number of pages ensures that the parties will soon be back in court to argue over what is "reasonable."

As Apple explained during meet-and-confer discussions with Unwired Planet, Apple's source code is a highly valuable and vulnerable trade secret, and any disclosure (even inadvertent) would be irreparably harmful to Apple.  Further, as Apple has explained, the entire purpose of having a source code review room, in which the source code is made available for review (and the existence of which the parties agree is necessary), is for the review to occur in the secure environment.  Removing concrete limits on source code printing eliminates any incentive for Unwired Planet to be careful and deliberate in choosing portions of code to print, and further takes away any disincentive for Unwired Planet's consultants to print out larger portions of code than truly necessary and review them at their leisure in their office or home (i.e., outside of the secure environment).  Unwired Planet's and its consultants' preferences and convenience plainly do not outweigh the need to protect Apple's valuable, and vulnerable, trade

-12-

secrets – namely, its source code.  Consequently, Unwired Planet should be required to abide by the same or similar printing restrictions as those that worked for the parties in their previous litigation.

### 3.   Provisions Governing the Use of Source Code in Court Filings

Paragraph 11(c)(xii) provides provisions regarding how source code may be used in court filings.  *See* Exs. A and B at 23 and 23-24, respectively.  Plaintiff proposes that the parties may use source code in documents "reasonably necessary for the prosecution of this litigation"—e.g. to the extent necessary in support of or in opposition to a motion.  Ex. A at 23.  Defendant proposes that the parties meet-and-confer should the need arise to use source code in a court filing.  Ex. B at 23-24.  Further, Defendant proposes that any such use be forbidden absent Defendant's agreement.  *Id.*

*Plaintiff's Proposal:*

Plaintiff contends that the restrictions and the meet-and-confer provisions Defendant seeks are completely unworkable.  First, Defendant seeks a complete bar to the use of source code without its consent.  *Id.* at 23, ll. 17-19.  Such a restriction is a wholly unacceptable limitation on the content and means of presenting Plaintiff's case.  Specifically, Defendant seeks a veto-right over when and how Plaintiff may present evidence supporting its case.  Plaintiff should be able to use source code in its court filings, to the extent reasonable and necessary, and should not need to obtain Defendant's approval to do so.

Second, the proposed meet-and-confer requirement is a superfluous procedure that lacks practical foresight and will, in practice, unnecessarily slow this case.  If the parties must stop and meet-and-confer every time Plaintiff needs to use source code to support a court filing, tremendous resources and time will be wasted.  Specifically, the time taken away from substantively advancing the action cannot be replaced.  Further, judicial resources will be unnecessarily consumed to decide impasses in the process.

Third, Defendant's proposal implies that the Court's procedures for filing documents under seal and its systems for maintaining the confidentiality of such filings are inadequate.  Indeed, Defendant proposes that the meet-and-confer process is necessary to discuss "how to

make [a filing containing source code] while protecting the confidentiality of the Source Code"
and that "the confidentiality protections [may not] be adequate." *Id.* at 23, ll. 16-19.  Such
concerns are unfounded.  This Court handles sealed filings containing confidential information
every day, and there is no reason to believe that the Court's computer systems cannot adequately
protect portions of Defendant's source code.  Again, the Northern District of California has
considered this very issue and its Model Protective Order permits filing Protected Material under
seal.  *See* Ex. H at 14, ll. 1-4.

Plaintiff proposes that the other terms of the protective order be used in lieu of
Defendant's proposal.  Specifically, Plaintiff proposes restricting access to expert reports and
court filings using "attorney's eyes only" designations and filings under seal.[1]

*Defendant's Proposal:*

Unwired Planet proposes that it be allowed to submit Apple's source code to the Court
under seal in court filings without Apple's prior knowledge.  Unwired Planet's proposal
necessarily involves making and transmitting an electronic copy of any source code that is
submitted because this Court requires electronic filing of submissions.  Thus, any submitted
source code would be transmitted over the public Internet and stored on the Court's servers.
This could lead to disastrous results if the transmission were intercepted or the Court's servers
were compromised.  Moreover, an inadvertent public filing, or a confidential filing that
inadvertently became public, could render Apple's highly confidential and sensitive source code
publicly available instantaneously.  Indeed, the Internet is filled with examples of the improper
and unlawful distribution of everything from court records to copyrighted music.  Even with
well-conceived safeguards, electronically stored files can be copied, disseminated, hacked into
(if on a networked computer), or altered, all without detection.  Improperly distributed source
code would not only reveal valuable trade secrets underlying Apple's most successful products,
but could also make Apple vulnerable to individuals interested in writing a debilitating virus or

---

[1]  These are the provisions contemplated in the Northern District of California Model Protective Order.  *See* Ex. H at 9-10.

1    breaking an important functionality.  As described above, any breach of security would result in

2    grave and irreparable harm that could affect not only Apple, but millions of consumers.

3        To avoid such a catastrophic disclosure, Apple proposes that the parties meet and confer

4    about the fact that a party intends to file source code before the source code is filed.  Apple's

5    proposal will insure that Apple will know what parts of its source code are being electronically

6    transmitted to and stored by the Court. This would permit Apple to ensure that any submission

7    contains only those portions that are necessary.  In addition, this would permit Apple to propose

8    alternative ways of providing source code for the Court's review the source code, such as, for

9    example, by providing the Court with a secure laptop on which it may review the portions of

10   source code Unwired Planet would have otherwise attached to its submission.  Moreover,

11   Apple's proposal makes common sense because it is unlikely that the Court will need or want to

12   review source code in light of the claims asserted in this case, and therefore the burden of

13   complying with Apple's proposal is necessarily low.

14       Apple understands that Unwired Planet is concerned that requiring the parties to meet and

15   confer without a way to resolve potential differences in opinion quickly may be problematic if a

16   filing's deadline is imminently approaching.   So, and as suggested by during meet and confer

17   between Apple and Unwired Planet, Apple would be willing to agree to consider a proposal for a

18   quick resolution of this type of issue by the Court.

19       Unwired Planet has no reason for placing Apple's confidential source code at risk by

20   refusing to agree to a reasonable meet-and-confer procedure.  Instead, the only reason Unwired

21   Planet can even articulate as to why it cannot agree to this provision is that it seems like a burden

22   on Unwired Planet.  As the parties are encouraged – if not required – to meet and confer before

23   filings anyways, this additional "burden" can only be described as minimal.  When compared to

24   the extreme sensitivity of Apple's source code, it is clear that Apple's proposed version of

25   Paragraph 11(c)(xii) of Exhibit B should be adopted.

26

27

28

### B.     Limiting Asserted Claims

*Defendant's Proposal*:

As the Court is aware, Unwired Planet has asserted ten (10) patents against Apple. Pursuant to the Court's Scheduling Order, Unwired Planet served its initial disclosures pursuant to Local Rule 16.1-6 on February 19, 2013.  There, for the first time, Unwired Planet indicated that it plans to pursue **247** claims against Apple in this case.  247 claims amounts to roughly 80% of the total number of claims contained in the ten patents, and an average of nearly 25 claims per patent.  For certain of the patents, Unwired Planet has in fact asserted all or nearly all of the claims contained in the patent.  *E.g.*, U.S. Patent No. 7,299,033 (Unwired Planet is asserting all of its 29 claims); U.S. Patent No. 6,532,446 (Unwired Planet is asserting all but two of 52 of its claims).

It appears, based on Unwired Planet's actions, that it has made virtually no effort to limit the scope of the case.  The purpose of the patent local rules, and the contentions' due dates contained therein, is for the parties to set forth their positions and narrow the scope of the case on an organized schedule.  The assertion of 247 claims does not accomplish either purpose. Unwired Planet itself must recognize that it cannot present 247 claims at trial (and indeed most trials involve more than an order of magnitude fewer claims), and thus withholding from Apple the identity of the claims it actually intends to pursue unfairly prejudices Apple and forces Apple to expend vast amounts of resources litigating claims that Unwired Planet will never assert. Alternatively, if Unwired Planet truly does not yet know enough about its own infringement theories to limit the claims beyond 247, then it has failed to meet its obligations to conduct substantive pre-suit and in-suit investigations.  And forcing Apple to address so many claims in its invalidity contentions (which, given the number of asserted claims, will require many, many thousands of pages of claim charts) is unfairly burdensome – particularly in the time allowed under the present schedule.  Providing invalidity claim charts on 247 claims, the vast majority of which will ultimately be dropped from the case, is an irrational waste of money and resources, and is far beyond the scope of what Apple believed would be required when Apple agreed to the

1   current schedule.  Moreover, the assertion of this many patent claims will be extremely

2   burdensome on this Court, for example at the claim construction phase of the case.

3          Claim limitation orders are no different from other mechanisms that ensure the efficient

4   administration of justice by placing reasonable limits on litigation, such as page limits imposed

5   on briefing, and time limits imposed on oral arguments.  *See*, *e.g.*, Fed. R. Civ. P. 1 (permitting a

6   Court to "secure the just, speedy, and inexpensive determination of every action"); *id.* 16

7   (permitting a Court to "formulat[e] and simplify[] the issues" or "adopt special procedures for

8   managing potentially difficult or protracted actions that may involve complex issues" or

9   otherwise facilitate "in other ways the just, speedy, and inexpensive determination of the case").

10  Furthermore, it is appropriate for the Court to require a plaintiff to narrow its case in order to

11  ensure the speedy and inexpensive determination of the case.  Consequently, courts – both inside

12  and outside of this district – have a longstanding practice of requiring plaintiffs to limit the

13  number of asserted claims in order to streamline the complex subject matter at issue for the

14  purposes of discovery and trial, oftentimes long before discovery has closed.  *See*, *e.g.*, Order,

15  *Visto Corp. v. Little Red Wagon Techs.*, No. 3:11-cv-02372-M (N.D. Tex. Oct. 18, 2012) (Dkt.

16  No. 104) (ordering the plaintiff to further reduce the number of asserted claims from 38 to 10

17  even after plaintiff had voluntarily limited asserted claims from 58 claims across 5 patents to 38

18  claims before defendant had to serve initial non-infringement contentions) (Exh. C); *Fenster*

19  *Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*, No. 04-0038-JJF, 2005 U.S.

20  Dist. LEXIS 20788, at *8 (D. Del. Sept. 20, 2005) (even where the plaintiff professed its

21  intention to limit its claims sometime after discovery, the court concluded that 90 asserted claims

22  over eight different patents was "unreasonable" and ordered the plaintiff to choose 10

23  representative claims, finding that that number was "appropriate from the viewpoint of the

24  typical patent litigation"); *Rambus, Inc. v. Hynix Semiconductor, Inc.*, No. 05-CV-00334-RMW

25  (N.D. Cal. June 27, 2007) (Dkt. No. 222) (ordering plaintiff who asserted 22 different *patents* to

26  limit its infringement contentions to no more than 25 representative *claims*, or roughly one claim

27  per patent, with over a year of fact discovery remaining) (Exh. D); Minutes of Proceedings, *Halo*

28  *Electronics, Inc. v. Pulse Engineering, Inc.*, No. 2:07-CV-00331-PMP-PAL (D. Nev. May 27,

2010) (Dkt. No. 191) (Pal, J.) (ordering the plaintiff to limit asserted claims from 190 to 15) (Exh. E); *Data Treasury Corp. v. Wells Fargo and Co.,* No. 2:06-CV-72-DF-CMC (E.D. Tex. Oct. 25, 2006) (Dkt. No. 325) (ordering the patentee to narrow its case from 224 potential claims to 18 claims during discovery and prior to claim construction, and reserving the right to further limit the assertion to ten claims for trial) (Exh. F).

Limiting the number of claims a plaintiff can assert from a particular patent furthermore does not deprive the plaintiff of property rights, which "attach to the patents as a whole, not individual claims." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1466 (Fed. Cir. 1998); *see also Pall Corp. v. Micron Separations*, 66 F.3d 1211, 1220 (Fed. Cir. 1995). In addition, "[t]he amount of damages is not affected by the number of claims infringed because the patent is infringed regardless of whether one, some, or all of its claims are infringed." *Ziggity Sys. Inc. v. Val Watering Sys.*, 769 F. Supp. 752, 819 (E.D. Pa. 1990). Moreover, it is not a violation of due process to require a patentee to limit the number of claims as long as the patentee is able to assert additional claims on a showing of need. *See*, *e.g.*, *Stamps.com, Inc. v. Endicia, Inc.*, 437 Fed. App'x. 897, 2011 WL 2417044, at *3 (Fed. Cir. 2011) (citing *In re Katz Interactive Call Processing Litig.*, 639 F.3d 1303, 1309-12 (Fed. Cir. 2011).

In response to Apple's request that Unwired Planet limit its claims beyond the 247 it has identified thus far, Unwired Planet counter-proposed as follows: That, for now, Apple address in its invalidity contention the 48 independent claims in the 10 asserted patents; that Unwired Planet then identify 60 claims two months thereafter; and that Apple provide invalidity contentions with respect to any "new" claims among the 60 claims a month after that. Critically, Unwired also would require that Apple limit its prior art to no more than three references or obviousness combinations per patent claim.

There are at least two major problems with Unwired Planet's proposal. First, Unwired Planet's waiting to identify its 60 claims until after Apple provides its invalidity contentions forces Apple to account for all 247 claims in its invalidity contentions and its current prior art searching, as Apple does not know which claims Unwired Planet will choose to assert. It also allows Unwired Planet to force Apple to address up to 108 claims, as nothing prevents Unwired

Planet from choosing 60 claims that do not overlap with the 48 claims that Apple would have to address first.  In other words, if Apple were to prepare invalidity charts that established that all 48 independent claims were likely invalid, Unwired Planet would have the ability to choose 60 newly asserted dependent claims.  Essentially, the parties would start over, and Unwired Planet's proposal to "limit" its claims is really just a proposal that would permit Unwired Planet to assert 108 claims while concomitantly previewing Apple's invalidity case to shape Unwired Planet's infringement contentions.  The local patent rules and the scheduling order in this case require, of course, that the plaintiff provide infringement contentions before the defendant has to provide invalidity contentions.  *Compare* Nevada Local Rule 16.1-6 *with id.* 16.1-8; D.I. 38.

Second, Apple should not be required to abandon meritorious defenses by limiting its prior art references – especially to the severe degree (only three references per claim) that Unwired Planet proposes.  While courts oftentimes require plaintiffs to limit the number of claims they assert against defendants in order to ensure the speedy and efficient resolution of the litigation, courts do not, as a general rule, require the defendant to limit its defenses.  *See*, *e.g.*, *Visto Corp.*, *supra*, (Dkt. No. 104) (ordering plaintiff to reduce the number of asserted claims claims) (Exh. C); *id.* (Dkt. No. 123) (denying defendant's motion to limit invalidity defenses, and specifically the number of invalidity references asserted after ordering the plaintiff to reduce the number of asserted claims) (Exh. G).

Consequently, Unwired Planet's proposal is not workable.  Apple proposes, instead, that the parties agree to a phased schedule for the limitation of claims.  In other words, Unwired Planet would be required to reduce the number of asserted claims to 50-60 claims within 30 days.  Then, Apple would have 75 days to serve its non-infringement and invalidity contentions pursuant to Local Rule 16.1-8 (i.e., the number of days that Apple would have had to respond to Unwired Planet's contentions had Unwired Planet asserted a reasonable number of claims).  Subsequently, the parties would meet and confer to establish reasonable further limits to the asserted claims prior to claim construction briefing and, ultimately, trial.

*Plaintiff's Proposal:*

This case is in its early stages.  Unwired Planet served its infringement contentions less than three weeks ago.  Apple's invalidity contentions are not due for approximately two months, claim construction is set for more than six months from now, and Apple has not produced any documents to date.  Nevertheless, Apple requested that Unwired Planet substantially reduce the number of asserted claims in time for filing this Report.  Apple's request is both premature and prejudicial.

First, the Federal Circuit cautions that an order limiting the number of asserted claims can be premature.  *In re Katz Interactive Call Processing Litig.*, 639 F.3d 1303, 1313 n.9 (Fed. Cir. 2011) (stating that "a claim selection order could come too early in the discovery process, denying the plaintiff the opportunity to determine whether particular claims might raise separate issues of infringement or invalidity . . .").  Following  *Katz*, district courts rarely require plaintiffs to limit their asserted claims early in a case.  *See, e.g., Gemalto S. A., v. HTC Corp.*, Civil Action No. 6:10cv561, slip. op. at 1 (E.D. Tex. Mar. 7, 2012) (Ex. I) (holding that it is "inappropriate to micro-manage the number of asserted claims, particularly prior to the *Markman* proceeding."); *Eagle Harbor Holdings, LLC v. Ford Motor Co.*, Civil Action No. C11-5503 BHS, slip. op. at 2 (W.D. Wa. Feb. 11, 2013) (Ex. J) (holding that "it would be inappropriate to order plaintiffs to limit their claims" after months of discovery and before claim construction.); *Bosch Healthcare Sys., Inc. v. Express MD sols., LLC*, Civil Action No. 3:12cv68, slip op. at 1 (N.D. Cal. Oct. 22, 2012) (Ex. K) (finding "that it would be premature to require Plaintiff Robert Bosch Healthcare Systems, Inc. ("Plaintiff") to restrict its claims at this point, before claims construction and before having an opportunity to conduct discovery"); *see also SPH America, LLC v. High Tech Computer Corp.*, Civil Action No. 08cv2146 DMS, slip. op. at 3 (Dkt. No. 106) (S.D. Cal. March 4, 2009) (Ex. L) (refusing to limit plaintiff to less than their 253 pending

claims and finding that the "factor that Plaintiff asserts [that] warrants denial of the motion: Prejudice.").  Unwired Planet's case fits precisely within the Federal Circuit's cautionary tale. Apple has not served invalidity contentions, claim construction is not imminent, and discovery has not yet begun in earnest.  It is simply "too early in the discovery process" for Unwired Planet to make educated decisions about which claims it will pursue for the remainder of this litigation. *See In re Katz*, 639 F.3d at 1313 n.9.

Second, Apple's premature request to reduce claims violates Unwired Planet's due process rights.  *See id.* at 1311 (limiting the number of asserted claims offends due process when "the burden allocation unfairly prejudices the claimant's opportunity to present its claim."). Each patent claim is a separate invention that covers a distinct property right.  The Supreme Court has recognized that "[c]laims are independent inventions" and "[e]ach invention is given the full period . . . which the statute prescribes for it."  *Leeds & Caitlin Co. v. Victor Talking Mach. Co.*, 213, U.S. 301, 319 (1909); *see also Jones v. Hardy*, 727 F.2d 1524 (Fed. Cir. 1984) ("each claim must be considered as defining a separate invention."); *and Dollar Elec. Co. v. Syndevco, Inc.*, 205 U.S.P.Q. 949, 959 (E.D. Mich 1979), *aff'd*, 669 F.2d 1370 (6th Cir. 1982), ("each claim of a patent is [to be] treated as if it [were] a separate patent.").  The Federal Circuit suggests that not allowing a patentee to assert claims that "present[] unique issues" can create unfair prejudice, and thus violate due process.  *See In re Katz*, 639 F.3d at 1312.  As noted above, ordering a reduction in asserted claims early in discovery denies a plaintiff the opportunity to determine whether unique issues even exist, much less present those unique issues to the Court and jury.  *Id.* at 1313 n.9.  This violates Unwired Planet's due process rights. Currently, Unwired Planet cannot assess whether invalidity or infringement present unique issues because Apple has not produced its documents or served its contentions.  Forcing Unwired Planet to reduce its claims in a vacuum is therefore prejudicial at this juncture.

In *Realtime Data v. Packeteer*, defendants filed a motion to limit the 84 claims asserted at that time to three claims for each of the nine asserted patents or 21 claims total.  *Realtime Data, LLC, v. Packeteer, Inc., et al.*, 6:08-cv-144 (E.D. Tex.), Dkt. 248 at 2 (Ex. M).  The Court noted that defendants' motion to limit claims was filed about two months before the scheduled *Markman* hearing and that it was long before the close of discovery.  *Id*. at 6.  In light of the early stage of the case and the timing of defendants' motion in *Realtime Data v. Packeteer*, the court found that arbitrarily limiting the number of claims plaintiff may assert would result in prejudice to plaintiff, and as a result denied the motion to limit the number of asserted claims. *Id*.  The timing of Defendant's Motion in the present case is even earlier than the timing of the analogous motion in *Realtime Data v. Packeteer*.

Unwired Planet is mindful of the Court and jury's time, and will identify a reasonable number of claims it will present at trial.  However, it requests the ability to identify those claims after evaluating the discovery and contentions that Apple is not due to provide for months.

Dated:  March 6, 2013

Respectfully submitted,

WATSON ROUNDS

 /s/ Michael D. Rounds
Michael D. Rounds
Nevada State Bar No. 4734
mrounds@watsonrounds.com
Adam K. Yowell
Nevada State Bar No. 11748
ayowell@watsonrounds.com
WATSON ROUNDS
5371 Kietzke Lane
Reno, Nevada 89511
Telephone: (775) 324-4100
Fax: (775) 333-8171

Theodore Stevenson III (*pro hac vice*)
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Fax: (214) 978-4044

Kevin Burgess (*pro hac vice*)
Texas State Bar NO. 24006927
kburgess@mckoolsmith.com
Pierre Hubert (*pro hac vice*)
Texas State Bar No. 24002317
phubert@mckoolsmith.com
MCKOOL SMITH, P.C.
300 W. 6th St., Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Fax: (512) 692-8744

***ATTORNEYS FOR PLAINTIFF
UNWIRED PLANET LLC***

- and -

LEWIS AND ROCA LLP

  /s/ Jonathan W. Fountain
Jonathan W. Fountain
Nevada Bar No. 10351
JFountain@LRLaw.com
3993 Howard Hughes Pkwy.
Suite 600
Las Vegas, NV 89169-5996
Telephone:  (702) 949-8340
Facsimile:  (702) 949-8374

E. Leif Reid
Nevada Bar No. 5750
LReid@LRLaw.com
LEWIS AND ROCA LLP
50 West Liberty Street
Suite 410
Reno, NV 89501-1922

Josh Krevitt (*pro hac vice*)
GISON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

H. Mark Lyon (*pro hac vice*)
Y. Ernest Hsin (*pro hac vice*)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GISON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone:  (650) 849-5300
Facsimile:  (650) 849-5333

***ATTORNEYS FOR DEFENDANT
APPLE INC.***