UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNWIRED PLANET LLC, | ) | 3:12-CV-00505-RCJ (VPC) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| APPLE INC., | ) | |
| Defendant(s) | ) | |

In this suit, plaintiff Unwired Planet LLC ("Unwired") asserts ten patents, and defendant Apple Inc. ("Apple") asserts non-infringement and numerous invalidity and unenforceability defenses and counterclaims. The parties have agreed on a protective order, but are unable to agree about three provisions: (1) the scope of the patent prosecution bar; (2) the amount of source code an expert or attorney may print; and (3) provisions governing the use of source code in court filings.

The court held a case management conference on March 11, 2013, and took these matters under submission. The court has reviewed the parties' case management report (#72), as well as the transcript of the hearing (#78), and this order follows.

**I.     Procedural History**

    **A.     The Scope of the Patent Prosecution Bar**: **Reexamination Proceedings**

The parties agree to a provision barring litigation counsel for either party from participating in the prosecution of patent applications related to "the functionality, operation, and design of the mobile applications relating to the technology disclosed in any of the patents-in-suit" (#72, Exs. A and B at 7). However, Apple seeks to have the prosecution bar cover counsel who have accessed the opposing party's

highly confidential business information or source code from directly or indirectly participating in reexamination proceedings, and counseling companies regarding the acquisition of any patent or patent application related to the functionality, operation, and design of mobile applications (#72, Ex. B at 7-8).[1] Unwired contends Apple's proposed bar is too broad and will restrict its attorneys' ability to participate in patent reexamination proceedings.

Unwired's proposed prosecution bar concerning reexamination proceedings provides:

> Absent the written consent of the Producing Party, any person on behalf of the Plaintiff or Defendant who receives one or more items designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY" . . . shall not be involved, directly or indirectly, in advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications, specifications, claims, and/or response to office actions, or otherwise affecting the scope of claims in patent applications relating to the functionality, operation, and design of mobile applications relating to the technology disclosed in any of the patents-in-suit. . . before any foreign or domestic agency, including the United States Patent and Trademark Office. These prohibitions are not intended and shall not preclude counsel from participating in the reexamination or reissue proceedings on behalf of a Party challenging or defending the validity of any patent, but are intended, inter alia, to preclude patentee's counsel from participating in the drafting of any claim amendments in reexamination or reissue proceedings. These prohibitions shall begin when access to "CONFIDENTIAL – ATTORNEYS' EYES ONLY" . . . materials are first received by the affected individual, and shall end two (2) years after the final resolution of this action, including all appeals.

(#72, Ex. A at 7).

Apple's provision states:

> Absent the written consent of the Producing Party, any person on behalf of the Plaintiff or Defendant who receives one or more items designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY," . . . shall not be involved, directly or indirectly, in any of the following activities: (i) advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications, specifications, claims, and/or responses to office actions, or otherwise affecting the scope of claims in patents or patent applications relating to the functionality, operation, and design of mobile applications relating to the technology disclosures in any of the patents-in-suit, . . . before any foreign or domestic agency, including the United States Patent Office and Trademark Office; and (ii) the acquisition of patents (including patent applications), or the rights to any such patents or patent applications with the right to sublicense, relating to the functionality, operation, and design of mobile applications. Nothing in these provisions is intended to preclude counsel from participating in

---

[1] The court addresses separately whether the prosecution bar should restrict Unwired's litigation counsel from advising Unwired regarding acquisition decisions.

2

> actions relating to settlement of litigations. These prohibitions are not intended to and shall not preclude counsel from participating in reexamination or reissue proceedings on behalf of a Party challenging the validity of any patent, but are intended, inter alia, to preclude counsel from participating directly or indirectly as patentee's counsel in reexamination or reissue proceedings. These prohibitions shall begin when access to "CONFIDENTIAL – ATTORNEYS' EYES ONLY," . . . materials are first received by the affected individual, and shall end two (2) years after the final resolution of this action, including all appeals.

(#72, Ex. B at 7-8).

Unwired points out that any reexamination proceedings concerning the patents-in-suit would likely be initiated by Apple, and Apple's proposal will allow its counsel to participate in reexamination proceedings, but not Unwired's counsel (#72 at 3-4). Because reexamination is directed to the alleged prior art, Apple's confidential information will play no role. *Id.* at 4. Unwired also contends that it is uneconomical for Unwired to be required to retain completely separate counsel for these proceedings when litigation counsel will already understand the issues and the prior art, the proceedings are of public record and will involve invalidity issues that will substantially overlap with the invalidity issues in this action, and the proceedings will involve the same public prior art that will be at issue in this action. *Id.* Although Unwired's counsel in this action will not serve as lead counsel in the reexamination proceedings, counsel would like to be involved in discussing the prior art that will also be litigated in this action (#78, Transcript of March 11, 2013 hearing ("Tr.") at 6). Unwired also points out that in an effort to reach a compromise, it has agreed not to participate in claim amendments. *Id.* Finally, Unwired notes that the Northern District of California's model protective order allows litigation counsel to participate in reexamination proceedings (#72, Ex. H).

Apple's view is that plaintiff's proposed prosecution bar does not go far enough in protecting Apple's confidential information from misuse (#72 at 6). In patent reexamination and reissue proceedings, if the PTO rejects any of the pending claims, the patentee may decide to amend strategically his/her claims, altering their scope, in order to distinguish the prior art while still attempting to cover the products of the parties the patentee has sued or intends to sue. *Id.* at 7. The patentee can also or instead argue with the examiner's conclusion about the applicability of various pieces of prior art, thereby attempting to distinguish those references from his/her invention. This results in changing his/her claims' scope in a similar way. *Id.* at 8. If Unwired makes arguments in a reexamination or reissue for

maintaining claim viability, it will result in surrender of patentable subject matter, and Unwired will have shifted claim scope, regardless of whether it makes claim amendments. *Id.* This is why Apple asserts that Unwired's proposed limitation of the reexamination and reissue bar to only the "amendment" of claims is insufficient. *Id.* Moreover, Apple points out that Unwired's sole business is to enforce patents through litigation or to buy new patents to enforce through litigation. This means persons who access Apple's highly confidential information or source code should be barred from participating as patentee's counsel in any reissue or reexamination proceedings related to the functionality, operation, and design of mobile applications. *Id.*

### B. The Prosecution Bar: The Acquisition of Patents

As earlier noted, the parties also disagree about the extent to which Unwired's outside counsel should be involved in strategic decision-making about the acquisition of patents. *Id.* at 9. Unwired's view is that its counsel represents clients involved in mobile applications, and the bar Apple proposes would conflict with an attorney's right to work and the client's right to choose its own counsel. *Id.* Unwired contends that when Apple produces confidential information in this case, litigation counsel will use that material for Markman proceedings, discovery, dispositive motions, and in settlement discussions. Unwired's counsel must be able to discuss the case with Unwired, but without disclosing confidential information because that is what the protective order will provide. Tr. at 14. Unwired suggests there is no reason to suspect that Unwired's litigation counsel will breach the protective order just because Unwired might acquire future patents. Tr. at 14-15.

Apple believes it would be highly prejudicial to allow Unwired – a patent holding company – to benefit from having Apple's confidential information and to use that information to acquire patents to assert against Apple's products. Tr. at 9-10. Apple's view is that it would be inappropriate for Unwired's outside counsel to know Apple's inner workings, use that information to advise Unwired about which patents it should acquire, and then turn around and sue Apple on those products. *Id.* Apple concedes that Unwired has used one law firm as its counsel; however, one attorney should serve as litigation counsel and a separate attorney should advise on patent acquisitions. *Id.* at 10-11. Despite having to retain different lawyers from one firm to engage in different tasks, as outlined above, this cost should not override the danger of the misuse of Apple's confidential information. *Id.* at 11. Apple also points out

that courts have recognized that no matter how well intentioned an attorney may be, it is often impossible for a person to avoid taking information learned in litigation, for example, and not use it for another purpose, such as patent acquisition. *Id.* at 15-16. This is the very reason for prosecution bars in patent cases, especially in this case where Unwired's sole reason for existence is to acquire patents and sue companies like Apple. *Id.* at 16.

**C.     Use of the Source Code: Paragraph 11(c)(v) of Proposed Protective Orders**

Unwired proposes the following language to govern the use of Apple's source code:

> The Receiving Party may print reasonable portions of the Source Code only when necessary to prepare for court filings or pleadings or other papers (including a testifying expert's expert report). The burden shall be on the Producing Party to demonstrate that the requested portions of the Source Code to be printed are unreasonable.

(#72, Ex. A at 19, ¶ 11(c)(v)).

Apple's version of the proposed protective order as it concerns source code provides:

> The Receiving Party may print limited portions of the Source Code only when necessary to prepare court filings or pleadings or other papers (including a testifying expert's expert report). Any printed portion that consists of more than twenty (20) pages of a continuous block of Source Code or 150 pages in total shall be presumed to be excessive, and the burden shall be on the Receiving Party to demonstrate the needs for such a printed copy.

(#72, Ex. B at 19, ¶ 11(c)(v)).

These provisions create restrictions about the volume of source code an expert or attorney may print while in the review room, which will be housed in the office of Apple's counsel. The parties agree that source code may not be printed for review and analysis outside the review room, and the producing party may object to the production of excessive amounts of source code. The disagreement arises over how the volume of printing should be restricted and who should bear the burden when objecting to the default restrictions in the protective order.

Unwired proposes that experts and attorneys should be allowed to print "reasonable" portions of source code when necessary to prepare an expert report, court filings, and so on, and that Apple should bear the burden to show such print requests are unreasonable or are requested for an improper purpose (#72 at 10). Unwired contends that Apple's hard limits on printing are too restrictive in this early stage of litigation and that Unwired has no way to gauge how much source code it will need to prepare all of

its expert reports and to support each motion or opposition that may be filed in this action. *Id.* The "reasonable" standard will avoid what Unwired perceives to be real impediments to Unwired's ability to present its case. *Id.* There are ten patents across five to six discrete product groupings; therefore, the limit that Apple proposes will amount to fifteen pages of printed code per patent where Unwired predicts there may be one million lines of source code covering just one product. *Id.* at 11. Finally, Unwired points again to the Northern District of California's model protective order, which adopts a limit of reasonableness similar to the language Unwired has proposed (#72, Ex. H).

Apple relies on prior litigation history with Unwired in support of the limit of 150 pages and twenty consecutive pages for printing source code. Unwired sued Apple in 2011 at the International Trade Commission in *In re the Matter of Certain Devices for Mobil Data Communication,* Inv. No. 337-TA-809 (Oct. 2011) (#72 at 11). That case also involved accused products similar to those accused in this case, and the parties agreed to the same limit to the number of pages to be printed that Apple is proposing here. In that case, the number of pages Unwired printed turned out to be lower than the limit. *Id.* at 12.

Apple's concern is that without a set limit for source code printing, Unwired could theoretically ask to have all of Apple's proprietary source code printed and place the burden on Apple to show the printing is not reasonable. Apple considers its source code a highly valuable and potentially vulnerable trade secret, making any disclosure (even inadvertent) irreparably harmful to Apple. *Id.* If there are no limits on source code printing, Apple fears that Unwired will have no incentive to select carefully those portions of the code it would like to print. In addition, there is the potential for printing larger portions of the code than necessary and reviewing it at counsel's office or home. *Id.* Unwired's preference and convenience should not trump the need to protect the source code for what Apple considers to be its crown jewels – the products at issue in this case. Tr. at 18.

**D. Provisions Governing the Use of Source Code in Court Filings: Paragraph 11(c)(xii)**

Unwired proposes that the parties may use source code in documents "reasonably necessary for the prosecution of this litigation" as follows:

> Notwithstanding the above, the parties agree that a Receiving Party may include source code and notes thereof in documents reasonably necessary

6

>for the prosecution of this litigation, including drafts of expert reports and court filings.

(#72, Ex. A at 23).

Apple's provision for the use of source code is more restrictive and provides, in part:

>Except as provided in this sub-paragraph, absent express written permission from the Producing Party, the Receiving party may not create electronic images, or any other images, or make electronic copies, of the Source Code . . . for use in any manner. . . . If a party reasonably believes that it needs to submit a portion of Source Code as a part of a filing with the Court, the Parties shall meet and confer as to how to make such a filing while protecting the confidentiality of the Source Code and such Source Code will not be filed absent agreement from the Producing party that the confidentiality protections will be adequate.

(#72, Ex. B at 23).

Unwired believes Apple's proposed provision is unworkable for three reasons. First, Apple's proposal is tantamount to a complete bar to the use of source code without Apple's consent, which will dictate the content and means of how Unwired presents it case (#72 at 13). Second, the meet-and-confer provision will slow down the case and consume judicial resources in deciding impasses about the use of the source code. *Id.* Third, Apple's procedure implies that the court lacks adequate safeguards in its systems to maintain confidential documents filed with the court. *Id.* at 13-14. Unwired believes there is no reason to believe Apple's source code will not be adequately protected, and once again points to the Northern District fo California's model protective order, which permits filing protected material under seal (#72, Ex. H at 14).

Allowing Unwired to submit Apple's source code to the court under seal without Apple's prior knowledge is of great concern to Apple (#72 at 14). Any source code would be transmitted over the public internet and stored on the court's servers, and if the transmissions were intercepted or the court's servers were compromised, this could result in irreparable harm to Apple. *Id.* at 14-15. The meet-and-confer process Apple suggests will give notice to Apple about what source code is intended to be filed, and it would allow Apple to insure that submissions contain only those portions of source code that are necessary. *Id.* at 15. The meet-and-confer might also result in a compromise, such as providing the court with a secure laptop on which to review the source code that might otherwise be attached to Unwired's

submissions. *Id.* Apple is amenable to some expedited court review of any dispute regarding the source code to assist in the efficient management of potential disputes. *Id.*

## II. Discussion and Analysis

### A. Prosecution Bar Regarding Reexamination Proceedings

The party seeking a protective order carries the burden to show good cause for its issuance, and this principle applies to a party seeking to include a provision in a protective order to effect a patent prosecution bar. *See* Fed.R.Civ.P. 26(c); *In re Deutsche Bank Trust Co. Ams.,* 605 F.3d 1373, 1378 (Fed. Cir. 2010) (citations omitted). In this case, Apple asks the court to extend the prosecution bar to patent examinations and reissue proceedings before the PTO, and it is undisputed that Apple has a legitimate interest in keeping its proprietary information confidential.[2] However, this interest must be balanced against Unwired's interest in having its litigation counsel, who is most knowledgeable about this case, be able to participate in the reexamination process. Apple responds that there is a substantial risk that Unwired's litigation counsel will inadvertently shape their participation in reexamination based upon the confidential information they receive. *See, e.g., In re Deutsche,* 605 F.3d at 1378.

Having considered arguments of counsel, and balancing the potential hardships each party faces, the court adopts Unwired's proposed provision concerning the prosecution bar as it concerns reexamination (#72, Ex. A at 7). The object of a protective order is to prevent use of confidential information obtained through litigation for purposes outside the litigation, but because reexamination is directed to alleged prior art, Apple's confidential information will play no role. *See Hochstein v. Microsoft Corp.,* No. 04-73071, 2008 U.S. Dist. LEXIS 72750 at *8-9; *In re Etter,* 756 F.2d 852, 856-57 (Fed.Cir. 1985). Unwired has already agreed that its litigation counsel will not participate in amending of claims in the reexamination proceeding. It does not appear to the court that there is risk of disclosure of Apple's confidential information, and Unwired's counsels' inadvertent use of information it obtained during discovery is not enough to preclude Unwired's litigation counsel from assisting in the reexamination in this case where Apple would initiate the reexamination.

---

[2] Unwired has agreed that its litigation counsel will not be involved in the actual amending of claims in any reexamination proceedings. *See* #72, Ex. A at 7.

### B.   Prosecution Bar Regarding Acquisition of Patents

Apple asks the court to prohibit outside counsel engaged in strategic decision-making on behalf of Unwired from having access to Apple's confidential information in this case. Having considered the parties' position, the court agrees with Apple that good cause exists to include in the protective order the bar that Unwired's outside counsel cannot use the confidential information obtained in this lawsuit for the purpose of giving advice on patent acquisitions. The court also agrees that the insertion of "directly or indirectly" is needed to insure that the bar is not circumvented through an intermediary. The parties have agreed that counsel who access confidential information may be involved in settlement discussions. This strikes a balance between Unwired's need to access confidential information to prosecute this case, and Apple's justifiable concern that Unwired not use this information to acquire patents to assert against Apple.

### C.   Use of the Source Code

Unwired contends that it is unreasonable to place limits on the number of pages of source code it should be allowed to print, especially in light of the fact that approximately eleven categories of software are at issue in this case. Tr. at 17. Unwired's experts will want to thoroughly review the relevant source code, and given the number of claims at issue, 150 pages seems an arbitrary number. Tr. at 18.

Apple characterizes its source code relating to the products at issue in this case – the iPhone, the iPod, the iPod Touch – as its "crown jewels," which justifies additional protections to protect it and to prevent inadvertent disclosure, duplication, and to insure that only those portions of the source code truly relevant to Unwired's claims be printed. Tr. at 18-20. Apple relies on the parties' recent experience in International Trade Commission litigation in which the parties agreed on a 150-page limit. In that case, Unwired only printed 119 pages of source code, and there were no disputes. Tr. 22. In other litigation, Apple reports that it has gone to great lengths to secure its source code and that in one instance, a consultant printed over 7,000 pages of source code and reviewed it outside of the agreed upon secure environment. Tr. at 21-22.

The court finds that Apple has established good cause to limit the amount of source code that Unwired may print beyond that which is "reasonable." Having considered the parties' positions, the court

orders that Unwired shall be limited to printing 250 pages of source code and thirty continuous pages. Should Unwired require additional pages of source code, the protective order shall include a provision that the parties shall first meet and confer in good faith to reach a compromise. If they are unsuccessful, Unwired shall have leave to request an expedited hearing before the court to resolve the issue.

### D.     Provisions Governing the Use of Source Code in Court Filings

Courts routinely issue protective orders that include provisions to allow parties to seal confidential information in court papers. Unwired believes its version of paragraph 11(c)(xii) provides the necessary safeguards that Apple requires, but also allows Unwired to make its own decisions about how to present its case. Tr. at 30-31. Unwired is also concerned that it will be unduly burdened and delayed by having to discuss those portions of Apple's source code that it intends to attach as exhibits to court filings. Tr. at 31.

Apple's position is that it does not intend to interfere with how Unwired presents its case; rather, its interest is in insuring the security of its source code and to allow the parties to consider other procedures to protect the code and enable to court to review it in conjunction with court papers. Tr. at 32-33. To address Unwired's concern that Apple will control how Unwired presents its case, Apple suggests an alternative: that rather than having to seek Apple's consent to file source code, they promptly bring the dispute to the court for a decision. Tr. at 33.

Unwired concedes that as a practical matter, this issue may not become a big problem and expects that the issue may arise only two or three times in this case. Tr. at 31-32. For these reasons, Unwired asserts that the risks Apple imagines are not as significant as it may think.

The court finds that good cause exists in this case to establish a mechanism for Apple to be given notice of the source code that Unwired intends to file with the court. Such a provision should also allow the parties to fashion alternatives to providing the court with source code, if the need arises. Therefore, the parties shall include Apple's version of Paragraph 11(c)(xii) consistent with this order.

### III.    Conclusion

Based upon the foregoing, and for good cause appearing,

**IT IS ORDERED** as follows:

1.     The court approves Unwired's provision in its draft protective order concerning the

prosecution bar as it concerns reexamination (#72, Ex. A, ¶ 6(b) at 7);

2. The court approves Apple's provision in its draft protective order concerning Unwired's outside counsels' use of confidential information obtained in this lawsuit for the purpose of giving advice on patent acquisitions (#72, Ex. B, ¶ 6(b) at 7);

3. The court approves Apple's provision in its draft protective order regarding restrictions on the volume of source code an expert or attorney may print while in the review room (#72, Ex. B, ¶ 11(c)(v) at 19-20) with the revision that Unwired shall be limited to printing 250 pages of source code and thirty continuous pages; and

4. The court approves Apple's provision in its draft protective order regarding how source code may be used in court filings (#72, Ex. B, ¶ 11(c)(xii) at 23-24).

**IT IS FURTHER ORDERED** that:

1. The parties shall submit a protective order consistent with this order no later than **Friday, April 19, 2013.**

2. In the event either or both parties files an objection to this order pursuant to Local Rule IB 3-1, the deadline to submit the protective order shall be stayed until the District Court issues its order on any objections.

Dated April 11, 2013.

_/s/ Valerie P. Cooke_
UNITED STATES MAGISTRATE JUDGE